**Jack WHALEY, Appellant,**

v.

**Jewell M. ZERVAS, Respondent.**

**No. 49276.**

Supreme Court of Missouri,

Division No. 1.

May 13, 1963.

Edward P. Burke, Strubinger, Tudor, Tombrink & Wion, St. Louis, for appellant.

Murphy & Kortenhof, Joseph M. Kortenhof, St. Louis, for respondent.

HOLMAN, Commissioner.

In this action plaintiff sought to recover damages in the sum of $20,000 for personal injuries sustained when the truck he was driving overturned. The trial resulted in a verdict for defendant. Plaintiff has appealed from the ensuing judgment and here makes the sole contention that the trial court erred in giving Instruction No. 6 at the request of the defendant.

The casualty occurred on April 29, 1959, in Franklin County, Missouri, at the "T" intersection of Highways 66 and 30. Highway 66 runs generally east and west at that point and consists of two lanes for traffic in each direction. A grassy strip with a dip in the center divided these traffic lanes. Highway 30 runs north and south but terminates at Highway 66 which it enters from the south. There is a graveled crossover between the eastbound and westbound lanes of Highway 66 at this intersection. A "Stop" sign is maintained at the point where traffic enters Highway 66 from Highway 30, and there is a "Yield" sign controlling vehicles entering the westbound lanes at the crossover.

Plaintiff testified that on the date mentioned he was employed by Kenosha Transport Company of Springfield, Ohio, as an over-the-road driver; that he was taking three trucks from Springfield, Ohio, to Albuquerque, New Mexico; that he was driving one large truck with a small truck mounted thereon, and the third truck was being towed by use of a tow bar; that he was westbound on Highway 66 and approached the intersection where the casualty occurred while driving in the right-hand lane at a speed of 40 miles per hour; that when about 100 feet from the intersection he heard the squeal of brakes and then saw the car driven by defendant proceeding

across the crossover; that the car continued making a left turn until it straddled both westbound lanes "and I was sitting almost on top of it; I swerved to the left to avoid contact with it, and when I tried to get the vehicle straightened up, I finally had it straightened up, * * *" defendant's car moved back over into the south westbound lane in front of the truck; that he then swerved again to the left but got too close to the shoulder and the truck rolled over.

Plaintiff further testified that after the trucks rolled over he "blacked out"; that when he recovered consciousness someone was attempting to pull him out of the cab; that this person, whom he later learned was Paul Phipps, put him in his car and they drove on west trying to overtake defendant's car; that they located defendant, and notified a highway patrolman who made an investigation of the occurrence.

On cross-examination plaintiff testified to three versions of the distance his vehicle was from Highway 30 when he first saw defendant's car. One version, as stated, was that he was 100 feet back when he saw defendant's car. He later stated that he was 35 or 40 feet from Highway 30 when he saw it, and finally he testified that when he first saw defendant's car it was straddling the line dividing the westbound lanes, and "I was almost right on top of it."

Defendant testified that she was driving her 1956 Mercury with her sister as a passenger; that they were going to Sullivan, Missouri, and approached Highway 66 from the south on Highway 30; that she stopped before crossing the eastbound lanes and also stopped at the "Yield" sign before turning left into the westbound lanes because a large truck was passing; that she saw plaintiff's truck 150 to 200 feet back and drove into the right westbound lane and kept her car in that lane; that she then heard this "terrible noise" and looked in her rear-view mirror and saw the truck "practically on top of me"; that the truck then swerved to the left and I saw in the rear-view mirror that it had turned over; that she went on to a garage a short distance down the road and sent the garage men back to the scene of the occurrence; that she then proceeded west until plaintiff and Mr. Phipps stopped her.

Defendant admitted that she was arrested and later entered a plea of guilty and paid a fine for "not yielding the right of way."

Donald Rodgers, the highway patrolman who investigated the occurrence, stated that plaintiff's truck laid down 100 feet of skid marks beginning at the east line of the intersection and angling from the center line of the westbound lanes; that plaintiff's statement to him was, "I was going west on Highway 66 at governer's speed of 40 miles per hour. This lady came across this intersection in front of another car and me. Then she pulled directly in front of me without any warning; swung to the outside lane, then just as I started by her, she cut back to the other lane in front of me. That's when I lost control." Defendant's statement to him was that she had "stopped there to let a truck go by and he was way back there, and I pulled out and went over into the far lane, and I heard the brakes squeal and I looked in my mirror and saw him go off to the side. I went on to the garage and asked those men to come down and help him as there was nothing I could do."

Plaintiff's verdict-directing instruction hypothesized defendant's failure to yield the right of way to plaintiff under the conditions detailed therein. As stated, plaintiff complains of error in the giving of Instruction No. 6 which reads as follows:

"The court instructs the jury that plaintiff, Jack Whaley, was under an obligation to exercise the highest degree of care to keep a lookout for the approach of other vehicles at the intersection formed by Highway 30 and Highway 66, accordingly, if you find and believe from the evidence that plaintiff failed to exercise the highest degree of care in keeping a lookout for the approach of the automobile operated by the defendant; and if you further find that such failure on the part of plaintiff, was negli-

gence, if you so find, and if you further find that said negligence on the part of plaintiff, if any, directly and proximately contributed to cause plaintiff's injuries, if any, then you are instructed that you must return your verdict in favor of defendant even though you may find that she was also negligent in the operation of her said automobile."

We will first consider plaintiff's contention that the giving of the instruction was error because there was no evidence to support that submission. He bases that contention upon admissions which were read from defendant's deposition to the effect that when she pulled out of the crossover plaintiff's truck was 150 to 200 feet away—that she was not able to form an estimate of his speed and "if I had I am sure I would never have ventured out." Plaintiff says that testimony was a binding admission that plaintiff's failure to keep a lookout was not the proximate cause of the casualty. We do not agree. There is nothing in the admissions referred to which would preclude a finding that plaintiff failed to keep a lookout and that such failure was a proximate cause of the occurrence. The admissions are not contrary to defendant's theory as to plaintiff's contributory negligence. Moreover, when such evidence is considered in connection with plaintiff's testimony to the effect that when he first saw defendant's car it was straddling the line dividing the westbound lanes, and that his truck was "right on top of it," it is clear that there was ample evidence from which the jury could reasonably have found that plaintiff negligently failed to keep a lookout and that such negligence proximately contributed to cause his injuries.

The next point stated in plaintiff's brief is that "under the circumstances, where plaintiff would ordinarily have had the right of way, the instruction is erroneous in directing a verdict against plaintiff on a generalized finding of 'failure to keep a lookout' without requiring a further finding that if plaintiff had exercised the high-

est degree of care in maintaining a lookout, he would have discovered the approach of the defendant into his path in time to have avoided the accident." No case is cited which holds (under facts and circumstances similar to those before us) that the omitted element complained of is required to be included in a "lookout" instruction. Plaintiff has cited Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, but that case is really authority contrary to his contention. In Moore, in discussing a "lookout" instruction, we said that "In that type of submission it is generally considered sufficient to hypothesize failure to keep a lookout and require a finding that such failure was negligence and directly caused the collision." 329 S.W.2d l. c. 25. We also stated therein that it is not essential that such an instruction hypothesize the exact manner and means by which the party could have acted in avoiding the casualty so long as there was substantial evidence to support a reasonable finding that he had the means and ability to have so acted that a collision would have been avoided. Other cases upholding the sufficiency of instructions similar to the one under consideration, in the respect of which plaintiff complains, are Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, and Horrell v. St. Louis Public Service Co., Mo.Sup., 277 S.W.2d 612. As indicated, we rule this contention adversely to plaintiff.

What we have heretofore said also disposes of plaintiff's contention that "said instruction is erroneous because it failed to hypothesize facts and circumstances sufficient to guide a jury in determining the ultimate issue of negligence." As we have stated, it was not necessary that the instruction hypothesize the manner or means by which plaintiff could have acted in avoiding the casualty. It is sufficient (under the facts in this case) if it requires a finding of failure to keep a lookout and that such failure was negligence which was a proximate cause of the casualty. The essential fact situation was hypothesized therein, but if plaintiff thought that additional facts should have been included in the

hypothesis he should have offered an amplifying instruction. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496. This contention is accordingly overruled.

■■ Plaintiff's final point is that said instruction "erroneously places a burden on the plaintiff to maintain a lookout in the entire intersection of Highways 30 and 66 when his actual duty was to maintain a lookout ahead and laterally but not necessarily embracing the entire intersection." No cases are cited in support of this contention and there is very little discussion of the point in the argument portion of the brief. The portion of the instruction complained of is the statement. "that plaintiff, Jack Whaley, was under an obligation to exercise the highest degree of care to keep a lookout for the approach of other vehicles at the intersection formed by Highway 30 and Highway 66." We are unable to see how this statement could have been prejudicial to plaintiff. It is elementary that it is the duty of a motorist to keep a lookout both ahead and laterally. Since Highway 30 did not extend to the north, this was a relatively simple intersection. The only place traffic could enter the westbound lanes was at the crossover. When the instruction is considered as a whole the only reasonable conclusion would be that it required plaintiff to keep a lookout for vehicles approaching the westbound lanes. In fact, the statement above quoted is immediately followed by the specific requirement of a finding that plaintiff failed to keep a lookout for the approach of defendant's automobile, and that is the only specific requirement, in that respect, made by the instruction. This point is without merit and is accordingly ruled adversely to plaintiff.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.