**Ralph L. MOORE and Mary Martha Moore, Appellants,**

v.

**James Wesley PARKS, Respondent.**

No. 54186.

Supreme Court of Missouri, Division No. 2.

Oct. 14, 1970.

Chapman & Chapman, by Nolan Chapman, Jr., Chillicothe, for appellants.

William J. Marsh, Thos. J. Conway, Kansas City, for respondent; Popham, Popham, Conway, Sweeny & Fremont, Kansas City, of counsel.

GEORGE E. SCHAAF, Special Judge.

Plaintiffs, Ralph L. Moore and Mary Martha Moore, husband and wife, bring this personal injury action in three counts,

in Clay County where the accident took place. Count I, the wife's claim for personal injuries, is for $50,000; Count II, the husband's claim for loss of his wife's services and consortium, is for $15,000 and $2,198.01 medical expense; and Count III, the husband's claim for personal injuries, is for $10,000. Count III was apparently abandoned before trial. On Count I, there was a verdict for the wife for $7,198.01 and on Count II, there was a verdict for defendant, James Wesley Parks, and against the husband. Both plaintiffs have appealed.

On May 1, 1966, plaintiffs, residents of Chillicothe, left their home to attend a jazz festival in Kansas City. Mr. Moore was driving the family car, a 1964 Dodge; his wife was a passenger sitting to his right, their son Rex and a Mr. and Mrs. Maupin were in the back seat. The accident happened as they were traveling south toward Kansas City on U. S. Highway 69, at its intersection with Highway 152, an east-west highway.

At the intersection, Highway 69 is a dual highway separated by a median strip and runs north and south. The southbound and the northbound lanes are 21' wide. Highway 152 runs east and west, is two lanes only and is about 16' to 19' wide. Eastbound traffic on Highway 152 must stop as there is a stop sign at the southwest corner of the intersection and there is also a red overhead blinking light in the middle of the intersection. The terrain is relatively flat although, according to defendant's testimony, Highway 69 slopes gently upward to the north. He said he could see north one half mile to the top of the hill. The weather was clear and bright.

Defendant, with his wife as a passenger, was driving a 1962 Ford homeward when the accident occurred. The front of his automobile struck the right side of plaintiffs' automobile in about the middle of the intersection, causing plaintiffs' car to veer to the southeast into the median strip where it stopped. Defendant's automobile stopped in the southbound lanes facing south.

Mr. Moore testified he was traveling south about 50 miles per hour "there was a pretty good line of traffic"—and did not see defendant going east into the intersection until he was 100' from him. He immediately applied his brakes and veered to his left but could not avoid the collision. Apparently plaintiff did not sound any horn.

Defendant testified that he stopped about 16' west of the intersection, which was his third stop, having stopped twice before as two cars ahead of him pulled up to the intersection, stopped, and then proceeded across. He looked to the north and as the last car proceeded south past him he pulled into the intersection. He reached a speed of about 4 miles per hour, traveled about 16' to 30' and was hit by plaintiffs' automobile. Defendant said "I did not see Mr. Moore's car until after the accident and it was sitting across the road."

Mrs. Moore received substantial injuries as a result of the accident. Her pelvis was fractured in three places, seven ribs were fractured on the right side, and a fractured clavicle required two operations, the first of which involved a bone graft from a hip. At the time of the trial, a screw and metal loop were still in place in her clavicle, and Mr. Moore testified his wife's medical bills and expenses totaled $2,198.03.

Plaintiffs submitted their case on failure to keep a careful lookout and failure to yield the right of way. Defendant submitted a contributory negligence instruction against Mr. Moore and the jury permitted only Mrs. Moore to recover, having reached the conclusion, apparently, that her husband contributed to the accident and, therefore, should not recover.

On appeal, plaintiffs assert that on the second day of trial, they should have been permitted to amend their petition to prove the operative costs of removing, if neces-

sary, the screw and metal loop in Mrs. Moore's clavicle. Plaintiffs' petition, filed more than 10 months before trial, did not plead future medical expenses and, thus, did not seek to recover costs of removing fixations from her clavicle. The record reflects that, without objection, Dr. James was questioned about the fact that, if the fixations bothered her in the future, they could be removed. Also, Dr. Gail testified that the pins and screws are just beneath the surface of her skin. This was all before the jury even though not specifically pleaded, and we can only conclude that the jury took it into consideration when they awarded Mrs. Moore a verdict in the sum of $7,198.01.

However, if Mr. Moore sought recovery of future operative costs of his wife, he should have so pleaded. Special items of damage for medical and surgical costs must be pleaded and are not admissible under a prayer for general damages. It was not until the second day of trial that plaintiffs first interjected the costs of future surgery and hospitalization for removal of the fixations in the wife's clavicle. The Court did not commit error in sustaining defendant's objection that these matters had not been pleaded. Layton v. Palmer, Mo., 309 S.W.2d 561, 567 [10, 11]; Walquist v. Kansas City Rys. Co., 292 Mo. 34, 237 S.W. 493, 495 [5, 6]; Blunk v. Snider, 342 Mo. 26, 111 S.W.2d 163, 166 [9, 10].

Leave to amend a pleading and to hear evidence thereon is within the sound discretion of the trial court. Hamilton v. Slover, Mo., 440 S.W.2d 947, 954 [6]. Where the amendment seeks to enhance damages and is in the middle of a trial, the exercise of a sound judicial discretion would require that the amendment not be allowed except upon such terms as will protect the rights of the party adversely affected thereby. The trial court did not err in refusing the amendment in trial. Simon v. S. S. Kresge Co., Mo.App., 103 S.W.2d 523, 526.

Finally, defendant says the jury found against the husband on his claim for loss of consortium and any alleged error committed against him was cured because the jury never reached the issue of damages, citing Russell v. Kotsch, Mo., 336 S.W.2d 405, 410 [7]. There the trial judge refused to allow plaintiff to exhibit a leg brace to the jury. In affirming this action, the Court said: "We need not consider the merits of that point. The exhibit in question, if admissible, would have been relevant only upon the question of the amount of the verdict in the event plaintiff prevailed upon his claim. Since the verdict was in favor of the defendant the jury did not reach the question of damages and plaintiff could not have been prejudiced by the alleged error." It's our opinion the trial judge properly denied the amendment to enhance Mr. Moore's damages, and since he did not prevail, it is obvious the jury did not reach the question of damages.

Plaintiffs next complain that they should have been permitted to show the percentage of disability which the wife suffered in her right shoulder, pelvic and rib areas as a result of her fractures. The record reveals the following questions propounded by plaintiffs' counsel of Dr. James, the operating orthopedic surgeon: Q. (By Mr. Chapman) "Doctor, do you have an opinion based on reasonable medical certainty, as to whether Mrs. Moore had any permanent disability?" A. "Yes, I have an opinion." Q. "And what is your opinion, Doctor?" A. "That she will have residual permanent injury to the right shoulder as a result of the injury and the treatment sustained; that she probably will have some permanent disability related to the other fractures sustained in the pelvis and in the rib regions." Q. "Doctor, what would you consider the disability to be percentagewise?" Mr. Conway: "That is objected to as improper measure of damage in a common law suit, your Honor." The Court: "Sustained." Q. (By Mr. Chapman) "Doctor, would you think that the Plaintiff

will ever be able to raise her arm as she could before this accident?" A. "I think it will be restricted somewhat."

Plaintiffs cite in their brief three cases on this point: Knipp v. Mankin, Mo., 336 S.W.2d 371, 374 [5]; Erbes v. Union Electric Co., Mo., 353 S.W.2d 659, 666 [5]; Lindsey v. P. J. Hamill Transfer Company, Mo.App., 404 S.W.2d 397, 400. It is Missouri law that a qualified medical expert can express his opinion that a person has sustained a certain percentage of disability in certain areas of his body. In this case, the trial court should have permitted Dr. James to so testify, but the plaintiffs cannot convict the trial judge of prejudicial error when the record reveals that only one question was asked concerning this matter, and that after an objection was sustained thereto, the plaintiffs dropped the matter and did not pursue it further. No offer of proof was made and we have no idea what the doctor's testimony would have been. Therefore, the testimony sought to be elicited is not before this Court and, as said in Thayer v. Sommer, Mo., 356 S.W. 2d 72, 80 [11, 12] "An objection to the exclusion of testimony cannot be considered on appeal in the absence of a showing of what the testimony would have been and that it was relevant and material. * * * The mere refusal to allow a witness to testify is not reversible error in the absence of a showing of what the answer would have been."

Plaintiffs' final allegation of error is the giving of Instruction No. 9, offered by defendant. It is a contributory negligence instruction directed against Mr. Moore. It is in the disjunctive: failure to keep a careful lookout or failure to have sounded a warning. Plaintiffs argue that the submissions in Instruction No. 9 are not supported by the evidence, are not the proximate cause of the occurrence, are an incorrect statement of the law, constitute a sole cause instruction, and are misleading in that the instruction authorizes the jury to return an inconsistent verdict, that is,

one in favor of Mrs. Moore and one against Mr. Moore.

The jury found in favor of Mrs. Moore, the passenger, who submitted in Instruction No. 3 against the defendant, his failure to keep a careful lookout and failure to yield the right of way. Defendant did not submit a contributory negligence instruction against her. The jury apparently found defendant negligent as to Mrs. Moore.

The jury, however, found against Mr. Moore, the driver, who submitted in Instruction No. 7, defendant's failure to keep a careful lookout and failure to yield the right of way. Apparently the jury applied Instruction No. 9, and found that Mr. Moore contributed to the accident in that he either failed to keep a careful lookout or failed to sound a warning. Defendant, also submitted Instruction No. 8 against Mr. Moore, which is a converse instruction. Instruction No. 11 was submitted by plaintiffs and defines "right of way." Instruction Nos. 8, 9 and 11 are as follows:

### *"Instruction No. 8*

"(MAI 29.04(1), now 33.04(1), tendered by defendant)

"Your verdict must be for defendant on Count II (*Mr. Moore's loss of consortium count*) of plaintiffs' petition unless you believe that defendant's conduct was negligent as submitted in Instruction No. 7." (Emphasis ours.)

### *"Instruction No. 9*

"(MAI 28.01 and 17.04 modified, now 32.01 and 17.04—tendered by defendant)

"Your verdict must be for defendant on Count II of plaintiffs' petition whether or not defendant was negligent if you believe:

First, plaintiff Ralph L. Moore either:

failed to keep a careful lookout, or Plaintiff Ralph L. Moore knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in

time thereafter to have sounded a warning, but plaintiff, Ralph L. Moore failed to do so; and

Second, plaintiff Ralph L. Moore's conduct, in any one or

more of the respects submitted in Paragraph First, was negligent; and

Third, such negligence of plaintiff, Ralph L. Moore

directly caused or directly contributed to cause any damage plaintiff Ralph L. Moore may have sustained."

*"Instruction No. 11*

"(MAI 14.05—tendered by Plaintiffs)

■ "The phrase 'right of way,' as used in the instructions, means the right of one vehicle to proceed ahead of the other.

■ When a vehicle is about to enter a through highway from an intersecting road and another vehicle on the through highway is so close as to constitute an immediate hazard, the vehicle on the through highway has the right of way.

Instruction No. 8, MAI 33.04(1), is an approved MAI instruction and properly submits the converse of Instruction No. 7. Instruction No. 9, MAI 32.01 and 17.04, is also an approved MAI instruction on contributory negligence. It is not, as plaintiffs alleged, a sole cause instruction since MAI 1.03 provides that sole cause instructions shall no longer be given and further, that a converse instruction adequately presents the same defense. Birmingham v. Smith, Mo., 420 S.W.2d 514."

■ Defendant has the right to an instruction submitting the converse of plaintiff's instruction and, in addition thereto, if the evidence supports it an instruction affirmatively based upon his theory of the case. Jefferson v. Biggar, Mo., 416 S.W.2d 933. We hold that Instruction No. 9, defendant's affirmative defense instruction on contributory negligence, was

properly given and supported by evidence. In deciding this, we must consider the evidence in a light most favorable to defendant and his theory of defense and give him the benefit of all reasonable inferences to be drawn from all the evidence, disregarding plaintiff's evidence unless it tends to support defendant's defense that plaintiff, Mr. Moore, was contributorily negligent. Highfill v. Brown, Mo., En Banc, 340 S.W. 2d 656, 661 [6, 7].

There was no dispute in the evidence that the terrain near the intersection was almost flat, that there were no obstructions to either drivers' views and that as plaintiff Moore drove his car south towards the intersection at about 50 miles per hour, defendant, who was going to cross over the intersection to the east, could look north and had an unobstructed view of almost one half a mile.

The defendant never saw plaintiffs' automobile until the collision and the jury believed him to be negligent. But Mr. Moore also never saw defendant's automobile until it was "approaching going onto the highway" or right at the edge of the pavement. At this moment, Mr. Moore was just 100' north of defendant's automobile traveling about 50 miles per hour and less than two seconds away from the accident. Mr. Moore testified he was conscious of the heavy line of traffic in which he was traveling, and from this we conclude the jury could reasonably have inferred that Mr. Moore was concentrating on the line of traffic and did not keep a careful lookout ahead and laterally as he is required to do. "It is elementary that it is the duty of a motorist to keep a lookout both ahead and laterally." Whaley v. Zervas, Mo., 367 S.W.2d 611, 615 [6, 7].

Defendant's affirmative defense was in the disjunctive in that it was alleged Mr. Moore also failed to sound a horn and that this contributed to the accident. Defendant had stopped three times before he pulled onto the highway, each time waiting for the car in front of him to proceed across the busy highway. The last time

he *stopped* he *was* 16′ west of the highway and thereafter traveled this 16′ onto the highway and to the point of collision. Plaintiff, Mr. Moore, never saw him travel this 16′ at 4 miles per hour and obviously defendant never saw Mr. Moore. Had Mr. Moore seen that defendant was unaware of him as he traveled this 16′ onto the highway, he might have sounded his horn, and alerted defendant to the fact that a car, with the right of way, was approaching the intersection. We think the jury could infer that a timely warning might have avoided the collision and that Mr. Moore's failure to sound his horn contributed to the accident. Gillis v. Singer, Mo.App., 86 S.W.2d 352, 357 [1–7].

We have read the cases cited in plaintiffs' brief on this point and note they are distinguishable from the facts herein except that Dixon v. Kinker, Mo.App., 410 S.W.2d 347, does have some relevance to the facts in our case. In that case neither party recovered in an accident at an uncontrolled intersection, but the court did say that as plaintiff was traveling east and 10′ to 12′ west of the west curb, he was contributorily negligent in not looking and seeing that defendant had applied his brakes so hard his wheels were locked and he was sliding north toward the intersection. The Court further held under those circumstances the plaintiff did not have the right to assume the defendant would yield the right of way. The Court held defendant properly submitted failure to keep a careful lookout but that failure to sound the horn was not the proximate cause of the collision, but nevertheless affirmed because of the former submission. The Court said at loc. cit. 352 [12] : "Had the defendant sounded his horn when the plaintiff first came into a position of immediate danger it would not have given the plaintiff any additional knowledge as, at that time, plaintiff had seen the defendant and so possessed all the knowledge of defendant's approach a warning could have brought him." In our case, defendant nev-

er saw plaintiff and plaintiff should have seen this and thereafter warned of his coming since he had the right of way.

One complaint remains relative to Instruction No. 9 and that is that since plaintiff, Mrs. Moore, recovered because of her injuries due to defendant's negligence, plaintiff, Mr. Moore, whose cause of action in loss of consortium and services is derivative, must also recover as a matter of law. If *not*, says plaintiffs, the verdicts are inconsistent, citing Watkins v. Myers, 12 N.J. 71, 95 A.2d 705; Keith v. Appelberg, City Ct.N.Y., 77 N.Y.S.2d 349; Elser v. Union Paving Co., 167 Pa.Super. 62, 74 A.2d 529; Noll v. Byorick, Fla.App., 108 So.2d 67; and Rhodes v. Winn-Dixie Greenville, Inc., 249 S.C. 526, 155 S.E.2d 308. In all of these cases except Elser, the injured spouse received a verdict and the spouse who sought recovery for loss of consortium and services lost and it was held the verdicts were inconsistent. These cases are not applicable hereto because none involves an allegation that the spouse seeking recovery for loss of consortium and services was contributorily negligent. See also Foster v. Rosetta, Mo., 443 S.W.2d 183; Manley v. Horton, Mo., 414 S.W.2d 254; and Marusic v. Union Electric Co., Mo., 377 S.W.2d 454.

Although there is no definitive decision in Missouri, the general law on the subject is as follows: "A husband's consent to, or his negligence contributing in causing an injury to his wife is a defense to an action by him for loss of her consortium and expenses resulting from such injuries to her." 27 Am.Jur. 109 (1940).

Other states have reached the same result. In Kokesh v. Price, 136 Minn. 304, 161 N.W. 715, husband sued for loss of services the 6 days his wife lived after an accident, and lost, the allegation being that he contributed thereto. The Court said at loc. cit. 716 [1] " * * * In an action by a husband in his individual capacity to recover damages for injury to his wife, negligence on his part which directly con-

tributes to the injury is a bar to his recovery."

The New Jersey and Alabama Supreme Courts reached the same result saying in Kimpel v. Moon, et al., 113 N.J.L. 220, 174 A. 209, 211, that "The contention that the law entitles a man to recover for the loss of his wife's society when he has contributed directly to the act from which the deprivation flows is contrary to the drift of judicial opinion on the legal effect, generally, of contributory negligence and leaves us unconvinced," and in Lindsey v. Kindt, 221 Ala. 169, 128 So. 143, that "The plaintiff, in addition to damages for personal injuries to himself, if proximately caused by the defendant's negligence, plaintiff's negligence not contributing thereto, or defendant's wantonness, was entitled to recover damages resulting for injuries inflicted on his wife, the loss of her services and society, and expenses incident to the treatment of her injuries."

A personal injury to Mrs. Moore gives rise to two causes of action. She won her personal injury case but her husband lost his case for loss of consortium and her services because of his contributory negligence. The verdicts are not inconsistent.

One point remains. Mrs. Moore received a verdict for $7,198.01, and the evidence was Mr. Moore's medical expenses for his wife were $2,198.01. Plaintiffs' allege in their brief the jury was confused in that they gave Mrs. Moore $5,000 plus the medical. If plaintiffs are attempting to allege the verdict is inadequate, the point is not before us because it has never been raised.

The judgment is affirmed.

DONNELLY, P. J., and FINCH, J., concur.

MORGAN, J., not sitting.