

# In the Missouri Court of Appeals
## Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| CAROL ANN CARLSON, | ) | No. ED102760 |
| as Personal Representative of | ) | |
| the Estate of James Harris, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Mark H. Neill |
| SAINT LOUIS UNIVERSITY, | ) | |
| | ) | |
| Defendant/Respondent. | ) | Filed: May 24, 2016 |

<u>Introduction</u>

Carol Ann Carlson (Appellant) appeals from the trial court's Judgment entered upon a jury verdict in favor of Saint Louis University (Respondent or SLU Hospital) on a third-amended petition filed March 28, 2011, alleging personal injury to Appellant's father, James Harris (Harris), [1] due to Respondent's negligence. We affirm.

<u>Factual and Procedural Background</u>

Appellant, as the personal representative of her father's estate, pursued the underlying action against Respondent for injuries Harris suffered following a cardiac catheterization performed on August 30, 2005, by Dr. Richard Stewart (Dr. Stewart)[2] and Dr. Jeffrey Ciaramita (Dr. Ciaramita) at SLU Hospital. Appellant alleged Dr. Stewart's use of a Duett closure device

---

[1] On November 8, 2013, Appellant was substituted for her father, Harris, who died on August 1, 2013.
[2] Dr. Stewart died prior to trial, without his deposition being taken.

(Duett) at the end of the procedure was contraindicated by Harris's peripheral vascular disease, causing Harris to develop a blood clot that ultimately led to the amputation of his left leg below the knee. After a jury trial, the jury returned a unanimous verdict for Respondent. Appellant filed a Motion for New Trial, which was denied. This appeal follows. Additional facts will be adduced as necessary in discussion of the points on appeal.

## Points on Appeal

In her first point, Appellant claims the trial court erred in admitting Respondent's Exhibit H, Harris's medical record from the Veterans Administration medical center (VA) documenting the use of the Duett on Harris's right leg in 2003 because there was no evidence Dr. Stewart relied on the VA record in deciding to use the Duett in 2005 on Harris's left leg and no reasonable inference could be drawn thereon.

In her second point, Appellant claims the trial court erred in admitting Respondent's Exhibit C, Harris's medical record from SLU Hospital documenting the use of the Duett on Harris's left leg in 2005, because notes in the record post-procedure constituted self-serving hearsay.

## Standard of Review

We review the trial court's admission or exclusion of evidence under a deferential standard of review for abuse of discretion. Ziolkowski v. Heartland Regional Medical Center, 317 S.W.3d 212, 216 (Mo.App. W.D. 2010). An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration. Gallagher v. DaimlerChrysler Corp., 238 S.W.3d 157, 162 (Mo.App. E.D. 2007). Only if there is a substantial or glaring injustice will we disturb a trial court's ruling. Calzaretta v. Willard, 391 S.W.3d 488, 493 (Mo.App. S.D. 2013).

## Discussion

### Point I – Exhibit H

On February 21, 2003, Harris presented to the VA with chest pain and underwent a cardiac catheterization via a right groin entry site. A Duett sealing device was used to close the puncture site of the right femoral artery. A Duett sealing device is a single-use, disposable, medical device used during surgery that stops bleeding from the femoral artery puncture site following the passage of the catheter (a thin hollow tube) through the blood vessel. The Duett is made up of two main parts: a thick liquid called a procoagulant that rapidly clots blood upon contact, and a flexible balloon catheter used to access and temporarily seal the puncture site. No complications resulted from this procedure. Exhibit H is the medical record from the VA documenting this procedure, and indicating the right femoral artery puncture site hemostasis was achieved with the Duett.

On August 30, 2005, Harris presented to the VA with chest pain, was transferred to SLU Hospital and underwent a cardiac catheterization via a left groin entry site. Dr. Stewart used a Duett to close the puncture site of the left femoral artery. Ten minutes later, Harris began complaining of lower left extremity pain. A repeat arteriogram (x-ray with dye) showed a blood clot and compromised blood flow in the left deep femoral artery. There was also evidence of a totally occluded left superficial femoral artery. Dr. Stewart noted that a "thrombus (blood clot) was identified at what appeared to be the site of the closure device with thrombus extending into the Profunda artery." He attempted to remove the blood clot using an angiojet catheter and tPa.[3] Dr. Gary Peterson (Dr. Peterson), a vascular surgeon, then performed thrombectomy surgery to remove the blood clot. Following the surgery, Dr. Peterson expressed concern Harris could lose his leg. Harris was admitted to the ICU after the thrombectomy surgery. On September 12,

---

[3] A tPa, a tissue plasminogen activator, is an enzyme that helps dissolve clots.

3

2005, Mr. Harris underwent a below-the-knee amputation due to persistent pain and gangrene of his lower left leg.

Exhibit H, Harris's medical record from the VA documenting the use of the Duett on Harris's right leg in 2003 was presented and referred to at trial during opening argument by Respondent and during the testimony of Dr. Ciaramita and Dr. Patricia Cole (Dr. Cole). Dr. Ciaramita testified the 2003 VA medical records were ordered and reviewed by the cardiology team at SLU Hospital prior to Harris's 2005 cardiac catheterization. Respondent argued Exhibit H was reviewed by Dr. Stewart and relied on in his decision to use the Duett as a closure device after the 2005 procedure. Dr. Cole also testified regarding the use of the Duett in the 2003 VA procedure on Harris.

Appellant maintains the trial court should have excluded Exhibit H and Dr. Cole's supporting testimony because it created a misimpression that Dr. Stewart relied on the VA record when there was no evidence of such reliance. Appellant also asserts such a reliance would be misplaced because the Duett was used at the VA on the right leg and at SLU Hospital on the left, and there was no evidence what the condition of the right femoral artery was in 2003, or that it was similar to the left femoral artery in 2005, or why a decision was made to use the Duett at the VA in 2003.

Although there was no direct testimony from Dr. Stewart that he relied in part on Exhibit H in determining to use the Duett as a closure device in the 2005 cardiac catheterization, Respondent presented credible evidence Dr. Stewart had access to and reviewed Exhibit H prior to the procedure as well as expert opinion that it was common practice to do so. Dr. Stewart's notes specifically reference a comparison he made between the results of the two procedures

4

indicating he looked at the 2003 catheterization report from the VA. Dr. Cole testified it is

standard practice to look at previous procedures on direct examination:

> Q. Is it typical for interventional cardiologist to document what device or what method is used to close at the end of the cath procedure?
> A. Yes. It's part of the procedure.
> Q. Okay. What does Exhibit H indicate was the closure method in the February 21, 2003, cath?
> A. It shows that the puncture site was the right femoral artery, so that would be this area but on the right side. And it says that it was closed with a Duett device.
> Q. And it says hemostasis. That just means –
> A. That means there was no bleeding.
> Q. Okay.
> A. They achieved closure of the vessel without bleeding.
> Q. Hemo being blood. Stasis being stain, right?
> A. No blood flow. No bad blood flow.

Appellant objected to the admission and discussion of Exhibit H and Dr. Cole's

testimony it would be standard procedure for a cardiologist like Dr. Stewart to review records

from a prior procedure such as Exhibit H. The trial court allowed the evidence and ruled

Appellant was free to cross-examine on the issue, which Appellant did.

Dr. Cole's opinion was not based upon assumptions unsupported in the evidence. Rather,

her opinion was supported by competent evidence and had sufficient probative force to be

substantial evidence. Washington by Washington v. Barnes Hosp., 897 S.W.2d 611, 615-616

(Mo.banc 1995). Dr. Stewart's own notes in the cardiac catheterization report and his resident

Dr. Abdul Moiz's notes indicate consideration of the 2003 procedure and its comparison to the

2005 procedure. Accordingly, although Dr. Stewart was not available to personally testify he

relied in part on Exhibit H in making his decision to use the Duett closure device, there was

sufficient evidence that he did. Further, there was expert testimony it was common practice to

look at a patient's previous records and especially so in this particular instance of a second

cardiac catheterization. From this evidence, the jury could have reasonably inferred Dr. Stewart

5

looked at and considered Harris's 2003 VA records prior to performing the 2005 procedure in determining the best method for closure. Townsend v. Eastern Chemical Waste Systems, 234 S.W.3d 452, 464-65 (Mo.App. W.D. 2007). The trial court did not abuse its discretion in allowing Exhibit H into evidence, as part of Harris's medical records. Ziolkowski, 317 S.W.3d at 216. Point I is denied.

## Point II – Exhibit C

Appellant also claims the trial court erred in admitting Exhibit C, Dr. Stewart's addendum to the 2005 cardiac catheterization report on Harris, indicating:

> After the catheterization was completed a left femoral angiogram was performed for consideration for vascular closure….The common femoral was felt to be appropriate for some vascular closure …. He also was noted to be moving around and could compromise a manual pull to his left femoral artery. He was noted to have peripheral vascular disease, but the site was deemed reasonable for closure.

Appellant argues these statements constitute self-serving hearsay because they were made after Harris developed a blood clot, and were made to explain why Dr. Stewart chose to use the Duett closure device even though it was contraindicated because of Harris's "severe" peripheral vascular disease. Appellant maintains Dr. Stewart wrote the addendum merely to justify his choice of the Duett closure device instead of manual closure by claiming Harris was moving around too much, risking compromise of a traditional manual closure of the puncture site.

The addendum is part of Harris's official medical records. "Medical records relating to observations, treatment, and diagnoses are generally admissible as business records." Klotz v. St. Anthony's Med. Ctr., 311 S.W.3d 752, 764 (Mo.banc 2010). The admissibility of business records is governed by Section 490.680,[4] which provides:

> A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course

---

[4] All statutory references are to RSMo 2000, unless otherwise indicated.

6

of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The statements made by the doctor performing the procedure chronicle and detail the very medical procedure at issue in this case, including follow-up and complications. The notes in the addendum were made September 1, 2005, the day after the procedure. The statements document Dr. Stewart's medical impressions, course of conduct, reasoning and conclusions, and were properly admitted under the business records exception to hearsay.

The notes Dr. Stewart made in the addendum were not self-serving. A self-serving statement is a statement made by a party in his own interest regarding liability, and is generally not admissible because the reliability of such comment is suspect. Gamble v. Browning, 277 S.W.3d 723, 729 (Mo.App. W.D. 2008). The notes in the addendum were necessary for subsequent healthcare providers to rely on in treating Harris. The transcript indicates Appellant's expert Dr. Arthur Meltzer (Dr. Meltzer) admitted it is standard practice for a doctor to document any complications in a procedure report, and this allows other doctors to know what happened during the procedure and rely on that information in their own care of the patient.

There was independent corroborating evidence in the record supporting the reliability of Dr. Stewart's statements in the addendum about his choice of the Duett closure device. Dr. Meltzer admitted one reason Dr. Stewart decided against manual compression for closure was because Harris kept moving, due to back discomfort,[5] which could compromise a manual pull. The evidence in the record demonstrates Harris could not be administered further sedation to stop his movement, because his oxygen levels were dropping. Dr. Meltzer conceded if a patient's oxygen saturation levels are dropping, administration of further sedation to prevent movement for a manual compression is not an option. Dr. Cole agreed with this assessment.

_____
[5] Dr. Ciaramita, present during the procedure, also testified Harris was unable to remain still.

Faced with the possibility Harris would move around, causing a significant bleed, or need to be sedated, causing respiratory problems, Dr. Stewart determined manual compression was not an option. Even Appellant confirmed Dr. Stewart told her on August 30, 2005, immediately after the cardiac catheterization procedure he had used the Duett closure device because the team did not think Harris could remain still on the table long enough for manual compression. This additional evidence in the record supports Dr. Stewart's reasoning as set forth in the addendum for choosing the Duett closure device.

Finally, whether Dr. Stewart's statements are to be accepted as credible is ultimately for the jury, not the court. Kivland v. Columbia Orthopaedic Group, LLP, 331 S.W.3d 299, 313 (Mo.banc 2011). Appellant's opinion of Dr. Stewart's motive and timing in making the addendum is not a sufficient reason to exclude the testimony. Id. The jury is the trier of fact in this case. Id. Factual determinations of matters in dispute, including the weighing of medical opinions, rest solely within the province of the jury. Id. It is error for the court to declare as a matter of law a result or legal effect which is within the exclusive province of the jury to determine. Id.

Credibility, consistency, and remoteness in time of the evidence all go to its weight, not to its admissibility. Brooks v. SSM Health Care, 73 S.W.3d 686, 698 (Mo.App. S.D. 2002); Zempel v. Slater, 182 S.W.3d 609, 619 (Mo.App. E.D. 2005); State ex rel. Missouri Highway and Transp. Com'n v. Our Savior Lutheran Church, 922 S.W.2d 816, 820 (Mo.App. E.D. 1996). The weight to be given to evidence is for the jury. Kivland, 331 S.W.3d at 313.

For the foregoing reasons, the trial court did not abuse its discretion in allowing Exhibit C into evidence, as part of Harris's medical records. Ziolkowski, 317 S.W.3d at 216. Point II is denied.

8

Conclusion

The trial court's judgment is affirmed.

SHERRI B. SULLIVAN, P.J.

Kurt S. Odenwald, J., and
Lisa P. Page, J., concur.