Mary K. Hoff, Judge
Randy Schieffer ("Mr. Schieffer") appeals from the judgment entered following a jury verdict in his favor in his personal injury action on the basis of an inadequate award of damages following improperly admitted evidence. We reverse.
Factual and Procedural Background
On November 17, 2011, Mr. Schieffer was involved in a motor vehicle collision when an automobile driven by Thomas DeCleene ("Mr. DeCleene") struck Mr. Schieffer's vehicle from behind. Following the incident, Mr. Schieffer experienced increasingly severe neck, shoulder, and back pain which, despite physical therapy and other treatment, has failed to improve.
On August 26, 2014, Mr. Schieffer filed suit against Mr. DeCleene asserting one count of negligence, and on January 2, 2015, Mr. Schieffer filed a first amended petition adding a claim of loss of consortium by Dinah Schieffer ("Mrs. Schieffer"), his wife.[1] In both the original and first amended petitions, Mr. Schieffer specifically pleaded for the recovery of $28,760.74 in medical expenses that he incurred due to the incident.
However, on the morning of trial on November 7, 2016, Mr. Schieffer's counsel sought leave from the trial court to file a second amended petition which merely omitted the claim for recovery of medical expenses. The trial court granted leave to *801 amend[2] and thereafter considered whether deletion of that claim foreclosed Mr. DeCleene's counsel from presenting, as he planned to do, any evidence of Mr. Schieffer's medical expenses at trial. While Mr. Schieffer's counsel asserted that such evidence would be beyond the scope of the pleadings since he abandoned the claim for the recovery of medical expenses, the trial court determined that such evidence would be admissible for two reasons. First, the trial court explained that under Section 490.715.5 RSMo 2000,[3] as it was amended in 2005,[4] any party may introduce evidence of the value of medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party. Thus, the trial court noted that so long as Mr. DeCleene's counsel explained to the jury that the expenses were the reasonable, necessary, and proximate result of Mr. DeCleene's negligence, it would permit their entry. Second, the trial court determined that the medical expenses were admissible because they "may very well shed probative legal and factual evidence that the jury could consider as to the extent and nature of the damages given the amount of expenses." Following this ruling, the parties commenced with trial.
At trial, the jury heard testimony that despite Mr. Schieffer's complaints of pain in his back and neck following the November 2011 collision, his first complaints of pain in those areas preceded that collision and followed a separate automobile accident in 2000. Mr. Schieffer admitted that following that 2000 accident, he suffered from a herniated disk and spinal stenosis in his neck as well as low-back pain. Likewise, Mr. Schieffer's first witness and primary care physician, Dr. Glenn Brothers ("Dr. Brothers"), testified via videotaped deposition that Mr. Schieffer first informed him of back pain prior to the November 2011 collision, on December 14, 2009. Dr. Brothers noted that Mr. Schieffer reiterated that complaint on October 19, 2011, at which time Mr. Schieffer reported that the pain was worsening. At the time, Dr. Brothers had concluded that Mr. Schieffer's condition was the result of a degenerative joint disease.
Following the November 2011 collision, Mr. Schieffer returned to Dr. Brothers on December 6, 2011 complaining of back and neck pain. Dr. Brothers explained that since that date, despite multiple subsequent visits, physical and neurological exams, a prescription of oxycodone, physical therapy, and a referral to a pain clinic, Mr. Schieffer's condition continued to worsen. Mr. Schieffer, Mrs. Schieffer, and their son Lee Schieffer testified that due to his increasing pain, Mr. Schieffer's abilities have become very limited such that he now has *802 trouble participating in hobbies such as camping and home-building, he cannot complete household chores such as lawn mowing without taking significantly more time to recover, and his capacity to conduct his duties at work has diminished.
Given Mr. Schieffer's worsening condition, Dr. Brothers testified that he believed the 2011 collision "contributed to the progression of his cervical ... deterioration" and an "exacerbation of the symptoms in his low[-]back." Following a lack of improvement in Mr. Schieffer's condition in the years after the collision, Dr. Brothers referred Mr. Schieffer to a neurosurgeon, Dr. Paul Santiago ("Dr. Santiago"), who met with Mr. Schieffer on April 5, 2013.
After examining MRI scans of Mr. Schieffer's cervical spine and lumbar spine, which showed that Mr. Schieffer suffered from degenerative spine disease and cervical spondylosis in his neck, Dr. Santiago began to discuss with Mr. Schieffer the possibility of surgery to his cervical spine to stabilize his condition. While initially, Mr. Schieffer sought to move forward with the operation, scheduling it for December of 2013, he ultimately cancelled it, claiming that he was concerned about the risks associated with it including paralysis, bladder and bowel complications, and diminished sexual function. Mr. Schieffer did not meet with Dr. Santiago again until mid-2016 to reschedule the surgery for August 2016, which he also cancelled, repeating his prior concerns.
During Mr. DeCleene's case in chief, his counsel sought to differentiate Mr. Schieffer's neck injuries, which were exacerbated by the November 2011 collision, from his low-back injuries, which purportedly predated the 2011 collision and followed the unrelated automobile accident in 2000. In doing so, Mr. DeCleene's counsel first questioned Mr. Schieffer about his treatment history following the collision, and Mr. Schieffer agreed that he was charged for multiple treatment sessions specifically targeting his low-back and that the medical records for those sessions did not "say a word about being sent for the neck." Thereafter, Mr. DeCleene's counsel attempted to introduce evidence of Mr. Schieffer's prior medical expenses to differentiate the costs expended upon his back and neck. Mr. Schieffer's counsel objected, stating that the medical bills were "outside the scope of the pleadings" such that they were "highly prejudicial and irrelevant and immaterial in this action." The trial court, however, reiterated his ruling that the bills were admissible pursuant to Section 490.715.5 so long as Mr. DeCleene's counsel admitted to the jury that the expenses were the result of Mr. DeCleene's negligence. Following this determination, Mr. DeCleene's counsel stated to the jury that "the amount necessary to fully satisfy [Mr. Schieffer's medical] bills was $14,743.75," and that "these [expenses] were reasonable, necessary, and a proximate result of the negligence of [Mr. DeCleene]."
During closing arguments, Mr. Schieffer's counsel suggested a verdict of $300,000, reflecting awards of "[$]125,000 for past [pain and suffering], [$]125,000 for future [pain and suffering], and some amount for medical." Mr. DeCleene's counsel, however, argued that Mr. Schieffer had been receiving treatment for his "low[-]back the month before the accident, but almost half of the treatment, and that's why I did all this is to show you, that $15,000 [in medical bills] wasn't for the neck. It was fifty-fifty." Mr. Schieffer's counsel objected to this statement, noting that, per the trial court's ruling admitting *803 the medical expenses evidence, "[h]e had to specifically say [Mr. Schieffer's medical expenses were] proximately caused based upon the statute. Now I think he's equivocating on that." In response, the trial court noted, simply, "The jury will be guided by its recollection of the evidence." Mr. DeCleene's counsel then asserted that, should the jury find that Mr. Schieffer was entitled to damages, a more appropriate verdict would be $25,000, noting that "I had to put the evidence on to tell you what all the bills were and then to show you that a lot of it was for the back," not his neck. After deliberating, the jury returned a verdict of $25,000.
Thereafter, Mr. Schieffer filed a motion for a new trial. In relevant part he argued, first, that the trial court erred in admitting evidence of the amount he paid in medical expenses since his second amended petition did not plead for such expenses. Second, he argued that since admission of those expenses was conditioned upon Mr. DeCleene's concession that they resulted from his own negligence, he should not have been permitted to assert to the jury that it could award any amount less than $14,743.75. The trial court denied Mr. Schieffer's motion for a new trial. Mr. Schieffer's appeal follows.
Standard of Review
"[W]e review the trial court's rulings on the admission of evidence for an abuse of discretion." Marmaduke v. CBL & Associates Management, Inc., 521 S.W.3d 257, 277 (Mo. App. E.D. 2017). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances before the court at the time and is so unreasonable and arbitrary that it shocks one's sense of justice and indicates a lack of careful consideration." Carlson v. Saint Louis University, 495 S.W.3d 777, 779 (Mo. App. E.D. 2016). Nevertheless, "[a] trial court has broad discretion to admit or exclude evidence, and we presume that a ruling within the trial court's discretion is correct." Gallagher v. DaimlerChrysler Corp., 238 S.W.3d 157, 166 (Mo. App. E.D. 2007) (internal citation omitted).
In considering a circuit court's interpretation of a statute for purposes of determining the admissibility of evidence, our review is de novo. Lampe v. Taylor, 338 S.W.3d 350, 360 (Mo. App. S.D. 2011). When interpreting a statute, "we are not guided only by an isolated sentence, but instead we look to the provisions of the whole law and its object and policy." Renner v. Director of Revenue, 288 S.W.3d 763, 766 (Mo. App. E.D. 2009).
Discussion
Mr. Schieffer raises two points on appeal. In his first point, he argues that the trial court improperly admitted evidence pertaining to his medical bills because such evidence was beyond the scope of the pleadings as set forth in his second amended petition. In Mr. Schieffer's second point, he argues that should we find evidence of his medical expenses admissible under Section 490.715.5, then we should grant a new trial because the trial court erroneously allowed Mr. DeCleene's counsel to argue that a portion of those expenses was not the reasonable, necessary, and proximate result of Mr. DeCleene's negligence, contrary to Section 490.715.5(1).
Point I
In Mr. Schieffer's first point, he argues that the trial court abused its discretion in *804 finding evidence of Mr. Schieffer's medical expenses, which amounted to $14,743.75, admissible at trial. He argues that, in filing his second amended petition, which deleted any claim for the recovery of medical expenses, he abandoned any such claim, rendering any evidence of medical expenses outside of the scope of the pleadings. As such, he claims that the jury was improperly permitted to consider evidence that should have been excluded. We agree.
Missouri abides by the "longstanding rule that trial is limited to the scope of the issues raised by the pleadings." International Div., Inc. v. DeWitt and Associates, Inc., 425 S.W.3d 225, 228 (Mo. App. S.D. 2014). Thus, "in the face of an objection, evidence must conform to the pleadings[, and] ... where objected-to evidence is outside the scope of the pleadings, the trial court has no discretion to admit such evidence." Id. (citing Textron Fin. Corp. v. Trailiner Corp., 965 S.W.2d 426, 431 (Mo. App. S.D. 1998) ) (emphasis in original). "When items of special damage are claimed, they shall be specifically stated [in the petition]," and it has long been settled in Missouri that "[e]xpenses for medical services are special damages." Section 509.200; Rule 55.19; Marshall v. Brown, 608 S.W.2d 105, 108 (Mo. App. E.D. 1980) (citing Moore v. Parks, 458 S.W.2d 344, 347 (Mo. 1970) ; and Layton v. Palmer, 309 S.W.2d 561, 567 (Mo. 1958) ). Therefore, "[s]pecial items of damage for medical and surgical costs must be pleaded," and "evidence of [medical] expense is not admissible under a prayer for general damages." Moore, 458 S.W.2d at 347 ; Layton, 309 S.W.2d at 567 (emphasis added).
In this case, Mr. Schieffer amended his petition on the morning of trial deleting his claim for the recovery of the $28,760.74 in medical expenses incurred following the November 2011 collision. As a result, Mr. Schieffer's petition pleaded only for the recovery of general damages relating to his past and future pain and anguish as well as an award for future medical treatment. Having deleted his claim for past medical expenses, Mr. Schieffer's medical bills following the 2011 collision were not within the issues as framed by his second amended petition, and when the plaintiff objected to their entry by Mr. DeCleene, "the trial court ha[d] no discretion to admit such evidence." International Div., Inc., 425 S.W.3d at 228 ; see also, Moore, 458 S.W.2d at 346-47 (since plaintiff did not plead future medical expenses, plaintiff could not elicit testimony from her expert witness that fixations in her clavicle surgically placed there following vehicle collision could be removed in the future if necessary as evidence was outside pleadings); and Layton, 309 S.W.2d at 567 (since plaintiff did not plead for recovery of medical expenses following injury from vehicle incident, defendant could not, upon plaintiff's objection, present testimony from surgeon about operation fees as evidence was beyond scope of pleadings).[5]
Mr. DeCleene counters that Mr. Schieffer's medical expenses were admissible, just as the trial court found, under the clear language of Section 490.715.5(1) as amended in 2005, or alternatively, that either Mr. Schieffer tried the issue of his past medical treatment by implied consent or that his medical expenses were relevant in rebutting Mr. Schieffer's claims of physical *805 and mental anguish. We find these assertions unavailing.
As to Mr. DeCleene's first argument, our review of a circuit court's interpretation of a statute for purposes of determining the admissibility of evidence is de novo. Lampe, 338 S.W.3d at 360. In interpreting a statute, "we are not guided only by an isolated sentence, but instead we look to the provisions of the whole law and its object and policy." Renner, 288 S.W.3d at 766. Thus, "[i]n determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." State ex rel. Evans v. Brown Builders Electrical Company, Inc., 254 S.W.3d 31, 35 (Mo. banc 2008) (quoting State ex rel. Wright v. Carter, 319 S.W.2d 596, 600 (Mo. banc 1959) ) (internal quotation marks omitted). "We must construe provisions of the entire legislative act together and, to the extent reasonably possible, harmonize all provisions." Bolen v. Orchard Farm R-V School District, 291 S.W.3d 747, 751 (Mo. App. E.D. 2009).
The statutory provision relied upon by Mr. DeCleene states that "[p]arties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party." Section 490.715.5(1). He argues that since the language of that section does not limit which "party" may introduce medical expenses evidence, then he, as the defendant and a party to the litigation, was permitted to do so. However, that reading of Section 490.715.5(1) isolates the relied-upon sentence from the rest of Section 490.715 such that it fails to acknowledge that the provision addresses and applies to evidence of collateral sources.
Section 490.715.1, as it existed at the time of trial, provided that "[n]o evidence of collateral sources shall be admissible other than such evidence provided for in this section." Section 490.715.1 (emphasis added). "The collateral source rule is an exception to the general rule that damages in tort are compensatory only." Lampe, 338 S.W.3d at 360. The rule "prevents a wrongdoer from reducing his liability for damages to an injured person by proving that [the] plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of the wrongdoer." McDonald v. Insurance Company of State of Pennsylvania, 460 S.W.3d 58, 64 (Mo. App. W.D. 2015) (quoting Collier v. Rother, 434 S.W.2d 502, 507 (Mo. 1968) ) (internal quotation marks omitted). Practically speaking, "[t]he application of the collateral source rule prevents an alleged tortfeasor from attempting to introduce evidence at trial that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance." Id. (quoting Smith v. Shaw, 159 S.W.3d 830, 832 (Mo. banc 2005) ) (internal quotation marks omitted). Thus, the "rule expresses the policy that a wrongdoer should not benefit from the expenditures made by the injured party in procuring the insurance coverage." Id.
In this case, Mr. Schieffer's deletion of his past medical expenses claim eliminated from the litigation the concern that Mr. DeCleene might mitigate his damages by presenting evidence that Mr. Schieffer's insurance company paid for part of his medical bills. This is because, since Mr. Schieffer sought only general damages for pain and suffering as well as the cost of *806 future surgery, which was pleaded, neither his medical expenses nor what his insurance company paid against those bills was put at issue. In fact, Mr. DeCleene himself provided that the reason for introducing the medical bills was not to show that Mr. DeCleene's insurance company paid for a portion of the expenses, but rather to clarify which parts of Mr. Schieffer's body received treatment and at what time relative to the 2011 collision. Neither Mr. Schieffer's second amended petition nor Mr. DeCleene's reasoning for putting on evidence of the bills implicates Section 490.715.5(1), and the trial court abused its discretion in relying upon that provision to admit evidence of Mr. Schieffer's medical expenses.
In the alternative, Mr. DeCleene argues, first, the expenses were admissible in that they were relevant to rebut Mr. Schieffer's claim of mental suffering and anguish. Specifically, he asserts that the bills, which amounted to about $15,000.00, would tend to show that Mr. Schieffer did not "suffer financial hardships created by the cost for treatment, humiliation for being subjected to financial obligations which [Mr. Schieffer] was unprepared to meet, shame[,] fear[,] anxiety and depression, all reasonably associated with difficulties of managing medical costs." This argument fails because Mr. Schieffer never made any claim that his mental anguish stemmed from the stress of financial hardship associated with the costs of his treatment.
"A party may introduce evidence to rebut that of his or her adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible." Govreau v. Nu-Way Concrete Forms, Inc., 73 S.W.3d 737, 743 (Mo. App. E.D. 2002). Such "[r]ebuttal evidence is evidence tending to disprove new points first opened by the opposite party. " Aliff v. Cody, 26 S.W.3d 309, 315 (Mo. App. W.D. 2000) (quoting Edley v. O'Brien, 918 S.W.2d 898, 907 (Mo. App. S.D. 1996) ) (internal quotations omitted and emphasis added).
At trial, Mr. Schieffer and his witnesses testified extensively as to the mental and physical suffering Mr. Schieffer experienced following the November 2011 collision. Our review of the record and the testimony at trial, however, shows that none of that testimony made any claim of or reference to anguish, stress, or suffering stemming from the difficulties of managing medical costs. Rather, the testimony showed that the anguish from which Mr. Schieffer suffered resulted from the increased pain he now experiences, the stress of determining whether to move forward with surgery despite potentially serious risks, the inability to maintain his prior hobbies and lifestyle, and the fear that his family members will be required to significantly alter their lives to provide him greater care. In the absence of any testimony tending to show that Mr. Schieffer suffered mental anguish stemming from the difficulty of managing his medical costs, evidence of Mr. Schieffer's medical bills "does not explain, repel, counteract, or disprove" any such claim first opened by him. Govreau, 73 S.W.3d at 744. As a result, Mr. Schieffer's medical expenses were not admissible as rebuttal evidence.
Finally, Mr. DeCleene asserts that Mr. Schieffer tried the issue of his past medical treatment by implied consent in that he was the first to introduce evidence about his physical therapy, pain management treatment, and treatment with Dr. Brothers and Dr. Santiago without objection from Mr. DeCleene. Mr. DeCleene *807 is correct that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings." Rule 55.33(b). However, "[a] party cannot be said to have implicitly consented to trying an issue outside the pleadings unless the consented to evidence would have been irrelevant to the issues that were contained within the pleadings." Fannie Mae v. University Village Apartments, 479 S.W.3d 706, 716 (Mo. App. E.D. 2015) (quoting Hutchens v. Burrell, Inc., 342 S.W.3d 399, 404-05 (Mo. App. W.D. 2011) ) (emphasis in original and internal quotations omitted). Mr. Schieffer did not estimate the cost of his treatment, and as discussed above, Mr. Schieffer presented his testimony not to recover for the cost of his treatment, but rather, to show the nature and extent of his physical pain and mental anguish. See, Marshall, 608 S.W.2d at 109 (noting that plaintiff's testimony, taken in context, showed he introduced statements regarding possible future surgery to show extent of physical and mental anguish, not as avenue for recovery of future medical expenses). Such testimony was clearly relevant to the issues raised in the pleadings, wherein Mr. Schieffer sought only general damages for his pain and suffering after the November 2011 collision. Since the evidence related to issues contained in the pleadings, Mr. Schieffer did not try the issue of his past medical treatment and those related expenses by implied consent, and Mr. DeCleene's response still fails. See, e.g., Coleman v. Mantia, 25 S.W.3d 675, 676-77 (Mo. App. E.D. 2000) (pleadings not amended by implied consent to include claims under comparative fault principles because testimony was relevant to issues that were pleaded).
"The trial court's authority is limited to such questions as are presented by the parties in their pleadings," and "where objected-to evidence is outside the scope of the pleadings, the trial court has no discretion to admit such evidence." Kerr v. Curators of the University of Missouri, 512 S.W.3d 798, 815 (Mo. App. W.D. 2016) (quoting McClain v. Hartley, 320 S.W.3d 183, 185 (Mo. App. E.D. 2010) ); International Div., Inc., 425 S.W.3d at 228. Since Mr. Schieffer's second amended petition deleted any claim for the recovery of medical expenses, evidence of his medical costs following the November 2011 collision was outside the scope of the pleadings and irrelevant, and "we can only conclude that the jury took it into consideration when they awarded a verdict" amounting to $25,000 because the evidence "was all before the jury even though not specifically pleaded." Moore, 458 S.W.2d at 347 ; see also, Urbach v. Okonite Company, 514 S.W.3d 653, 660 (Mo. App. E.D. 2017) ("Evidence is prejudicial if it tends to lead the jury to decide the case on some basis other than the established propositions in the case."). Thus, we find that the trial court abused its discretion in admitting evidence of Mr. Schieffer's medical expenses over his objection, and a new trial is warranted. See, Layton, 309 S.W.2d at 567 ; and International Div., Inc., 425 S.W.3d at 232-33.
We need not and do not consider Mr. Schieffer's second point because its examination was contingent upon our concluding that Mr. Schieffer's medical expenses were admissible under Section 490.715.5, and we did not find as such.
Conclusion
The judgment of the trial court is reversed and remanded for a new trial.
Colleen Dolan, Presiding Judge and Lisa S. Van Amburg, Judge, concur.

Neither Mr. Schieffer nor Mrs. Schieffer advance any argument on appeal concerning Mrs. Schieffer's loss of consortium claim.

While the trial court granted leave to amend, the docket sheets do not reflect that the second amended petition was actually filed in the circuit court. Further, while the record on appeal contains a purported copy of the second amended petition, it is not file-stamped. The transcript reveals, however, that Mr. DeCleene's counsel had no objection to the second amended petition so long as his answer to the first amended petition would be considered responsive to the new pleading. Mr. Schieffer's counsel had no objection to that arrangement, and the parties proceeded under the new pleading.

Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

While more recent amendments to Section 490.715 went into effect on August 28, 2017, the relevant iteration of the statute here is the one as it existed following the 2005 amendments because "the rules of evidence in effect at the time of trial govern." Stiers v. Director of Revenue, 477 S.W.3d 611, 618 (Mo. banc 2016).

While Mr. DeCleene notes that both Moore and Layton predate Section 490.715 as that statute existed in 2005, which we discuss in greater detail below, he fails to note that those cases were decided upon principles of pleading, not the collateral source rule, and he cites to no authority suggesting that either case has been overturned.