

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| TRAVELERS COMMERCIAL CASUALTY COMPANY, | ) ) ) | No. ED100802 |
| | ) | Appeal from the Circuit Court |
| Appellant, | ) | of St. Louis County |
| vs. | ) ) | Hon. Richard C. Bresnahan |
| VAC-IT-ALL SERVICES, INC., | ) ) | FILED: |
| Respondent/Cross-Appellant. | ) | December 16, 2014 |

Travelers Commercial Casualty Company appeals from the judgment entered after a jury verdict awarding its insured, Vac-It-All, $8,000 in overpaid premiums on the parties' competing breach of contract claims. Vac-It-All cross-appeals seeking prejudgment interest on that award. We affirm the judgment on the jury's verdicts, but reverse and remand for the entry of prejudgment interest.[1]

Travelers provided workers' compensation insurance for Vac-It-All. Travelers was the State's residual or "high-risk" market carrier, which is a market of "last resort" for employers who cannot get workers' compensation insurance elsewhere. The premium for insurance was based on the type of work Vac-It-All's employees performed. On its application for insurance, Vac-It-All classified its employees as performing "debris removal" and "equipment rental and

---

[1] Vac-It-All has filed a motion to strike Travelers's brief or dismiss the appeal based on violations of Rule 84.04. We exercise our discretion to review the merits of the appeal despite the technical briefing deficiencies because the violations do not impede our review. See Gray v. White, 26 S.W.3d 806, 816 (Mo. App. E.D. 1999). The motion is denied.

drivers." The estimated premium based on those classifications was approximately $24,000 for the policy period.

The policy issued for the period of September 8, 2006 to September 9, 2007. The policy provided that Travelers could audit the insured during the policy period and use the audit information to determine the final premium. The final premium "will be determined after this policy ends by using the actual, and not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." Premium payments were to be paid "when due."

After a preliminary audit, Travelers determined that the correct classification for Vac-It-All's employees was for "roofing." In February of 2007, Travelers sent Vac-It-All a letter informing it of the change in classification and resulting increased "total premium" of an additional $127,137 for the policy period. Vac-It-All disputed that classification, but upon further review, Travelers declined to change it. On April 12, 2007, Travelers sent Vac-It-All a letter stating that the insured must pay the "undisputed portion" of the increased premium due for that quarter and at the same time stating that it was cancelling the policy. Vac-It-All did not believe there was an "undisputed premium" and did not pay the increased premium.

Travelers filed a petition against Vac-It-All, alleging that failure to pay the increased premium was a breach of the insurance contract resulting in over $81,000 in damages for unpaid premiums. Vac-It-All counterclaimed, alleging that Travelers's cancellation of the policy based on the failure to pay the increased premium before the expiration of the policy term was a breach of the contract resulting in over $16,000 in damages for overpayments. At trial, there was evidence regarding: what type of work Vac-It-All's employees performed, how Travelers conducted its audit, the dispute over the classification and the amount of premiums paid. The

jury found that Travelers had breached the policy, but Vac-It-All had not. It awarded Vac-It-All $8,000 in damages. Travelers's motions for judgment notwithstanding the verdict and for new trial were denied, as was Vac-It-All's motion for prejudgment interest. This appeal and cross-appeal follow.

In Point I, Travelers claims the trial court erred by allowing Vac-It-All's insurance broker, Daniel Boehme, to give expert opinions on the ground that he had not been identified as an expert witness in response to interrogatories. Although the interrogatories were not made part of the record of this appeal, the parties agree that Boehme was not disclosed as an expert of any kind, but was listed as a witness. Travelers claims that allowing him to testify as an expert was prejudicial since it could not depose him before trial or retain its own expert to rebut his opinions. Travelers does not argue that Boehme was not qualified to give his opinion. We find no error in allowing Boehme to testify.

The portion of Boehme's testimony challenged on appeal is as follows:

The position I took and I take today is that they [Travelers] are wrong in using [the "roofing" code]. . . . I told [the auditor] that that code was wrong, that the codes we have on the policy were an accurate reflection of what they do. And she had not visited the job site. The auditor did not visit a job site, and how could they possibly make that determination.

Travelers also challenges Boehme's responses to its own questioning on cross-examination: when asked if he was aware that the "debris removal" code does not apply to new construction, Boehme answered that when there is no classification that fits precisely, one should use the "best fit" and that "debris removal" was the best fit for Vac-It-All's employees.

Even if these statements constituted the opinions of a non-retained expert—one whose opinion was not formed in anticipation of litigation—and even if Boehme was not properly disclosed as a non-retained expert, we find no abuse of the trial court's broad discretion in

3

deciding to allow him to testify despite that discovery violation. The trial court has broad discretion in resolving discovery violations. See Feiteira v. Clark Equipment Company, 236 S.W.3d 54, 61 (Mo. App. E.D. 2007). The purpose of the discovery rules is to take the surprise out of trials so that all relevant facts and information pertaining to the action may be ascertained in advance of trial. St. Louis County v. River Bend Estates Homeowners Association, 408 S.W.3d 116, 132-33 (Mo. banc 2013) (discussing difference between retained experts, about whom more information must be disclosed to prevent such surprise, and non-retained experts, about whom less must be disclosed). Thus, on appeal, we consider whether the challenged act by the trial court, under the totality of the circumstances, has resulted in prejudice or unfair surprise. Feitera, 236 S.W.3d at 61. We conclude that Travelers was not prejudiced or unfairly surprised by Boehme's testimony as to why the classifications he chose were accurate and the one Travelers chose was not.

The record indicates that Travelers was aware that Boehme disputed its classifications long before trial. Boehme signed Vac-It-All's application and was the person who contacted Travelers to dispute Travelers's classification after the audit. According to the auditor's deposition, she had multiple phone conversations with Boehme regarding the disputed classification. Travelers received Boehme's written letter of dispute and ultimately, sent Boehme a letter indicating the final resolution of his dispute. Boehme's affidavit, filed in conjunction with cross-motions for summary judgment, states that he disputed Travelers's reclassification of Vac-It-All's employees to "roofing." It is clear that Travelers was aware Boehme had an opinion regarding those classifications; in fact, it sought to exclude his testimony before trial. Because Boehme was identified as a lay witness, Travelers was aware he might testify at trial and, because it was already aware that he disputed its classification, could have

4

deposed him to further discover the basis for that dispute. The failure to list Boehme as a non-retained expert did not have any effect on Travelers' ability to learn his opinions because discovery of the facts known and opinions held by a non-retained expert "shall be discoverable in the same manner as for lay witnesses." Rule 56.01(b)(5). Any surprise to Travelers by Boehme's testimony at trial was not unfair and was due to its own failure to depose him before trial. See Beaty v. St. Luke's Hospital of Kansas City, 298 S.W.3d 554, 559-60 (Mo. App. W.D. 2009) (no obligation to provide even properly disclosed non-retained expert for deposition, as such experts can be deposed like any other lay witness).

Nor did Travelers suffer prejudice, as it claims, by its inability to retain its own expert to rebut Boehme's opinions because its own witnesses all testified in a way that contradicted Boehme's opinion. The Travelers auditors both testified as to why they thought "roofing" was the proper classification, and the underwriter testified similarly. These expert opinions, like Boehme's, came from non-retained persons who were primarily testifying about the facts of the case. Allowing Boehme to give his reasoning for disputing the classification to the same extent Travelers's witnesses gave their reasoning was appropriate, even though he may not have been properly disclosed. Having been presented with no other basis for excluding his testimony, the trial court did not abuse its discretion in allowing Boehme to testify.

Point I is denied.

In Point II, Travelers challenges the verdict-director given on Vac-It-All's counterclaim, claiming that the failure to identify the specific contractual obligation in the second paragraph amounted to an impermissible roving commission. We disagree.

The instruction stated:

Your verdict must be for defendant Vac-It-All and against plaintiff Travelers Insurance if you believe:

5

> First, plaintiff Travelers Insurance cancelled its policy of insurance with defendant Vac-It-All on May 12, 2007, and
>
> Second, because of such cancellation, plaintiff's contract obligations were not performed, and
>
> Third, defendant Vac-It-All was thereby damaged.

Travelers itself submitted a verdict-director on its breach of contract claim that contained an identical second paragraph:

> Your verdict must be the plaintiff if you believe:
>
> First, defendant did not pay the premium balance billed after the audits, and
>
> Second, because of such failure, defendant's contract obligations were not performed, and
>
> Third, plaintiff was thereby damaged.

"A party cannot complain of error in the instruction of an opposing party which is common to instructions of both parties." Layton v. Pendleton, 864 S.W.2d 937, 941 (Mo. App. W.D. 1993). Thus, by using the exact same language in the verdict-director it submitted on its breach of contract claim, Travelers waived any objection to the second paragraph of Vac-It-All's verdict-director. See id.; see also In re Care of Coffman, 92 S.W.3d 245, 251 (Mo. App. E.D. 2002); Gurley v. Montgomery First National Bank, N.A., 160 S.W.3d 863, 872 n.4 (Mo. App. S.D. 2005); Tri-State Motor Transit Co. v. Navajo Freight Lines, Inc., 528 S.W.2d 475, 487 (Mo. App. 1975).

Even if it was not waived, we find no merit in this claim of error. Both of the above verdict-directors were patterned after Missouri Approved Instruction 26.02, which provides as follows:

6

Your verdict must be for plaintiff if you believe:

> First,        defendant did not (*here insert the nature of the breach*), and
>
> Second,        because of such failure, defendant's contract obligations were not performed, and
>
> Third,        plaintiff was thereby damaged.

This MAI is to be used "only when there is no dispute concerning the terms of the agreement and the defendant's obligation to perform his agreement." MAI 26.02, Notes on Use. There is no argument that this was not the applicable instruction for this case. Thus, it was required to be given as set forth therein. See Rule 70.02(b); Angeles v. Larson, 249 S.W.3d 278, 281 (Mo. App. E.D. 2008) (courts require strict compliance with requirements of MAI).

The crux of Travelers's argument is that the second paragraph should have been modified to identify a particular contractual obligation. But modification of an applicable MAI is only allowed when it is necessary "to fairly submit the issues in a particular case." Rule 70.02(b). If the applicable MAI does not violate the substantive law and there is evidence to support it, then it should not be modified. Gorman v. Wal-Mart Stores, Inc., 19 S.W.3d 725, 731 (Mo. App. W.D. 2000). Doing so unnecessarily is presumptively prejudicial. Angeles, 249 S.W.3d at 281.

The second paragraph did not need to be modified to fairly submit the issues in this case because the terms of this contract were not at issue. This is the very reason MAI 26.02 was applicable in the first place. Thus, modifying the second paragraph to explain Travelers's contractual obligation was not necessary. If Travelers actually thought the jury should be deciding what its contractual obligations were regarding cancellation, then it could have argued that MAI 26.02 was not proper and submitted MAI 26.06 instead. MAI 26.06 is applicable when both breach and the terms themselves are at issue and provides for a description of the

obligations each party undertook in the agreement and whether they were performed.[2] But there has never been an argument that MAI 26.02 was inapplicable or that MAI 26.06 should be used instead. Each party's verdict-director was properly submitted in accordance with MAI 26.02.

The only place to tailor MAI 26.02 to the particulars of the case was in the first paragraph, where the parenthetical required a description of the "nature of the breach." It is there—in the first paragraph, not the second—that the parties had the opportunity to include the ultimate facts that amounted to breach with a level of specificity sufficient to avoid creating a roving commission. There was no such opportunity for inserting particularly tailored language in the second paragraph, again because in this type of case, the contractual obligations were not in dispute and therefore were not an ultimate fact necessary for the jury to determine. Thus, the second paragraph was correctly submitted exactly as it is in the MAI.[3]

Point II is denied.

In Point III, Travelers claims the trial court erred by overruling its objection to a statement Vac-It-All's counsel made during closing argument. In its brief, Travelers contends that counsel was "permitted to tell the jury that the roofing category only includes companies

_____

[2] MAI 26.06 provides:

> Your verdict must be for plaintiff if you believe:
>
> First, plaintiff and defendant entered into an agreement whereby plaintiff agreed *(set out plaintiff's agreement)* and defendant agreed *(set out defendant's agreement)*, and
>
> Second, plaintiff performed plaintiff's agreement, and
>
> Third, defendant failed to perform defendant's agreement, and
>
> Fourth, plaintiff was thereby damaged.

[3] Travelers cites to Minze v. Missouri Department of Public Safety, in which the court held that the phrase "adverse action" in an employment discrimination instruction was a roving commission because it "impermissibly enlarged the scope of conduct for the jury's consideration beyond that which was actionable." 437 S.W.3 271, 278 (Mo. App. W.D. 2014). This is not at all similar to the instruction in this case. Here, unlike in Minze, the first paragraph— unchallenged on appeal—clearly set forth the actionable conduct as being only cancellation of the policy. See id. at 276. Thus, in this case, unlike in Minze, the jury knew precisely the factual determination it had to make to find Travelers liable. The other cases cited by Travelers are similarly inapplicable because in those cases, unlike here, the instructions were too broadly worded and did not limit what the jury could find actionable, as the first paragraph of the instruction in this case does. See Grindstaff v. Tygett, 655 S.W.2d 70, 73-74 (Mo. App. E.D. 1983); Scanwell Freight Express STL, Inc. v. Chan, 162 S.W.3d 477, 482 (Mo. banc 2005).

that put on roofs." It argues that this was a misstatement of the law—meaning the regulatory manual containing the code definitions—and the trial court had an affirmative duty to instruct the jury to disregard the comment. We disagree.

First, the transcript pages Travelers cites to as containing the alleged misstatement contain no such statement, only the side-bar discussion following Travelers's objection on the previous page. Nor does our review of the transcript reveal any such express statement that the roofing code only includes companies that put on roofs. There can be no claim of error regarding a statement that was never made. Rather, the statement counsel *did* make—the one to which Travelers objected—followed counsel's explanation of the court's instruction to give undefined words their ordinary meaning: "The Court's instructions are no different than any other instruction. When we read a document, a roof means a roof. A roofer means somebody does construction on a roof and repairs a roof."

As to *this* statement, we find no merit in the argument that it constituted a misstatement of the law. It was not contrary to any instruction of law given by the court, and did not go beyond the evidence. "The permissible field of argument is broad, and so long as counsel does not go beyond the evidence and the issues drawn by the instructions, or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments." Peters v. ContiGroup, 292 S.W.3d 380, 391 (Mo. App. W.D. 2009). Counsel's statement was within this wide latitude. Moreover, counsel's statement resulted in no prejudice. The jury was repeatedly instructed verbally by the court that counsel's statements were argument, not evidence; the jury was instructed, according to MAI 2.03, that the instructions "constitute the law of this case and each such instruction is equally binding upon you"; and the jury requested and was given the exhibit that Travelers argues

contains the correct legal definition of the "roofing" code. Under these circumstances, we find no error.

Point III is denied.

In Point IV, Travelers asserts that the trial court erred in "denying Travelers's motion for new trial and in denying Travelers's motion for judgment notwithstanding the verdict on Travelers's claim and Vac-It-All's counterclaim because the verdicts were against the weight of the evidence." None of the multiple assertions of error in this point have any merit.

First, Travelers's weight of the evidence argument is misplaced in the context of a motion for JNOV. The propriety of a motion for JNOV is based on whether there is substantial evidence to support the verdict, and the denial thereof will not be overturned unless there is a complete absence of probative facts. The Fireworks Restoration Co., LLC v. Hosto, 371 S.W.3d 83, 87 (Mo. App. E.D. 2012). Second, Travelers has no basis for challenging the denial of the motion for JNOV or the motion for new trial as to the verdict in Vac-It-All's favor on Travelers's claim because that was a defendant's verdict, which need not be supported by *any* evidence. "[A]n allegation that a defendant's verdict is not supported by substantial evidence is not a question for appellate review because the plaintiff has the burden of proof and a defendant's verdict need not be supported by any evidence." Muegler v. Harper, 932 S.W.2d 419, 421 (Mo. App. E.D. 1996).

That leaves a claim of error only as to the denial of the motion for new trial on Vac-It-All's counterclaim. The trial court's denial of a motion for new trial on grounds that the verdict was against the weight of the evidence is "a conclusive determination that cannot be overturned on appeal." Meyer v. Purcell, 405 S.W.3d 572, 582 (Mo. App. E.D. 2013). "If a trial court refuses to grant a new trial on the ground that the verdict is against the weight of the evidence, appellate courts will not pass on the weight of the evidence." Id. And Travelers does not argue

that the jury's verdict on Vac-It-All's counterclaim completely lacks supporting probative facts. Thus, we will not interfere with it. See Burbridge v. Union Pacific Railroad Company, 413 S.W.3d 649, 655 (Mo. App. E.D. 2013).

Point IV is denied.

In Point V, Travelers claims error resulting from the following statements by Vac-It-All's counsel during closing argument. We find no error.

1) "I think one thing we know for sure today is that Travelers could care less about Vac-It-All."

Travelers objected that this was "prejudicial and argumentative." The court responded that this was closing argument and told the jury to be "guided by the evidence and the instructions they are given."

2) "Mr. Pauli's [representative of Vac-It-All] been here since the outset. These people really care about this case. This means a lot to them. This could be their future."

Travelers started to object, but the court *sua sponte* said that was "wrong argument" and told counsel to "argue the facts of the case that are in evidence."[4]

3) "Mr. Pauli told you that in February of 2007 he looked at the letter and was told, you owe $163,000 more than you've ever had to pay before. And he said to himself—you heard the testimony—that this is crushing."

Travelers objected that this is "improper argument." The court pointed out this was a reference to what the witness said and then instructed to jury to "remember the evidence and be guided by the evidence."

4) "Even though it's Travelers, and they want to be treated like the Queen of England, they're not in this courthouse. They're not in this courtroom. These two parties should be treated equally, and I know you will treat them equally.

---

[4] Counsel continued: "You can also tell because nobody from Travelers was here. Nobody bothered to show up, except they send their lawyers down here. They're too busy out somewhere sending bills." It is unclear whether this statement is actually being appealed, but as there was no objection, any claim of error relating to it would not be preserved for our review.

Travelers doesn't want to treat them equally.  They have a monopoly in the state of Missouri.  They're the only residual market carrier, and they have their way with everybody."

Travelers objected that the reference to Travelers treating everybody unfairly was "arguing matters that are not in evidence."  The court instructed the jury that "This is argument.  This is not evidence, ladies and gentlemen.  This is what the parties are saying the evidence will show.  Okay?  This is closing argument."

As Vac-It-All correctly points out, the claims of error on appeal—that these comments were irrelevant, argued matters not in evidence and were designed to elicit sympathy and prejudice based on improper references to Travelers's absence at trial and comparative wealth—were not necessarily encompassed in the broad general objections to these statements at trial—that they were prejudicial, argumentative or improper.  Thus, much of this point is not preserved for appeal for that reason.

Even so, we find no error in the trial court's handling of these objections.  Because the court did not make any express verbal rulings on these objections, we could presume they were overruled.  See State v. Martin, 388 S.W.3d 528, 540 (Mo. App. S.D. 2012) (where no verbal ruling on objection and counsel told to continue closing argument, objection was presumptively overruled).  But in each instance, the court took curative measures, instructing the jury after each objection that they were to be guided only by the evidence and that these comments were merely the arguments of counsel.  These measures were well within the trial court's broad discretion in ruling on objections to closing argument and sufficiently remedied any possible prejudice.  "The prejudicial impact of improper closing argument is considered by the trial court when it determines the proper response to such argument, and appellate courts defer to the trial court's ruling

unless there is an abuse of discretion." Joiner v. Auto-Owners Mutual Insurance Co., 891 S.W.2d 479, 483 (Mo. App. W.D. 1994).

Point V is denied.

In Point VI, Travelers argues that Vac-It-All failed to exhaust its administrative remedies. Travelers contends the circuit court did not have primary jurisdiction over the issue of which classification was proper for these employees and argues there is no private cause of action for the violations of insurance regulations Vac-It-All alleges in its counterclaim. We disagree.

The fundamental flaw in this argument is that—contrary to Travelers's characterization and despite the focus of the evidence and argument at trial to explain the parties' dispute—Vac-It-All's counterclaim was *not* that Travelers breached the policy by misclassifying its employees. Rather, the verdict-director on the counterclaim submitted to the jury only the question of whether Travelers breached the contract by cancelling the policy earlier than the expiration of its term. None of the instructions appear to have asked the jury to decide which code was correct. Classification of these employees was not the ultimate issue presented to this jury for determination. Based on the way the jury was instructed, the jury's verdicts determine only that cancelling prior to the expiration of the policy term constituted a breach and that Vac-It-All's failure to pay the increased premiums after the audit was not a breach. Even if the jury had to conclude that Travelers had no basis for using the "roofing" code to increase the premiums, the verdicts and the judgments entered thereon do not constitute a *finding* that Vac-It-All's employees must be classified in a particular way. Thus, even if Travelers is correct that a challenge to an insurer's classification must first be raised in the Department of Insurance and all of

13

its administrative remedies exhausted before coming to court, that simply was not the issue brought to or determined by this court or this jury in this case. Nor were there any allegations of regulatory violations determined by the court or this jury.

Point VI is denied.

In Point VII, Travelers argues the trial court erred in denying its motions for JNOV on its own claim and Vac-It-All's counterclaim because Travelers proved "as a matter of law" that it did not breach the contract and Vac-It-All had. This point is without merit.

First, Travelers was not entitled to JNOV in its favor on its own claim. The standard of review for the denial of a plaintiff's motion for JNOV is no different than a denial of a motion for directed verdict, and parties bearing the burden of proof generally are not entitled to a directed verdict. Rouse v. Cuvelier, 363 S.W.3d 406, 414 (Mo. App. W.D. 2012). While a directed verdict for a plaintiff may be warranted where the defendant has admitted all of the necessary facts to establish liability, this is not a case in which Vac-It-All made such admissions. See All American Painting, LLC v. Financial Solutions and Associates, Inc., 315 S.W.3d 719, 723 (Mo. banc 2010).

Second, Travelers has failed to demonstrate the complete absence of probative facts to warrant reversing the jury's verdict on Vac-It-All's counterclaim. We review the denial of a motion for JNOV to determine whether substantial evidence supports each and every fact essential to liability. Sanders v. Ahmed, 364 S.W.3d 195, 208 (Mo. banc 2012). We view the evidence in a light most favorable to the verdict reached by the jury, and we will reverse only when there is a complete absence of probative evidence supporting the jury's verdict. Id. Here, viewed favorably to the verdict, the evidence

14

showed that the policy allowed Travelers to audit Vac-It-All during the policy term, but the final premium was to be "determined after this policy ends."[5] Travelers billed Vac-It-All for additional premiums prior to the expiration of the policy term and then cancelled due to non-payment also before the expiration of the policy term. This was sufficient evidence from which to find that Travelers's cancellation—at that time and for that reason—was a breach. Finally, there was sufficient evidence that Vac-It-All suffered damages. The evidence showed that Vac-It-All paid for a year's worth of coverage and then, due to Travelers's cancellation, received several months less than that.[6]

Point VII is denied.

On cross-appeal, Vac-It-All claims the trial court erred in denying prejudgment interest on the $8,000 damages award under section 408.020.[7] We agree.

"Whether a party is entitled to prejudgment interest is governed by section 408.020. Interpretation and application of a statute to the facts is a question of law that we review de novo, giving no deference to the trial court's ruling." Doe Run Resources Corp. v. Certain Underwriters at Lloyd's London, 400 S.W.3d 463, 476 (Mo. App. E.D. 2013). Section 408.020 states:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due

---

[5] The quoted language comes directly from the policy, which was in evidence and was argued to the jury as the basis for finding that cancellation for nonpayment was a breach. This language is conspicuously absent from Travelers's argument on this point. It chooses instead to quote only those portions of the policy that it deems favorable to its position.

[6] In fact, the evidence shows that Vac-It-All paid over $36,000 to Travelers, which was even more than the estimated premium of approximately $24,000 for the policy term. The jury's $8,000 award, however, appears to be a pro-rated refund, based on the $24,000 estimated premium, for the months remaining on the term after Travelers canceled

[7] Travelers complains that this point is not preserved because in its motion to the trial court for prejudgment interest, Vac-It-All mistakenly cited to sections "484.020 and 484.04," which have nothing to do with prejudgment interest. As Vac-It-All points out, this typographical error did not prevent Travelers from responding to the merits of whether prejudgment interest was proper under the correct statute. This mistake will not prevent us from addressing the merits of this claim any more than Travelers's numerous mistaken references to the record have prevented us from reaching the merits of its claims.

and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

"The purpose of statutory prejudgment interest is to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money." Doe Run Resources, 400 S.W.3d at 477. Prejudgment interest may only be awarded where the claim is liquidated, which means the claimed amount is "fixed and determined or readily ascertainable by computation or a recognized standard." Id. "Generally, prejudgment interest on unliquidated claims is not recoverable, for the reason that where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay." Watters v. Travel Guard International, 136 S.W.3d 100, 111 (Mo. App. E.D. 2004).

Travelers contends the amount of damages was unclear throughout this lawsuit: Vac-It-All pled $16,270.80 in damages in its counterclaim and in its interrogatory answer, but then asked the jury for $20,916, which included an unspecified amount meant to compensate Vac-It-All for having to procure additional insurance for the remainder of the policy term. Travelers argues that, under these circumstances, it is impossible to say that the $8,000 the jury awarded was ascertainable in 2007 at the time of cancellation. We disagree that these variances defeat Vac-It-All's ability to recover prejudgment interest. Exact calculation is not necessary for a claim to be liquidated, and a court may consider equitable principles of fairness and justice when awarding prejudgment interest. Weinberg v. Safeco Insurance Comapny of Illinois, 913 S.W.2d 59, 62 (Mo. App. E.D. 1995). Nevertheless, we agree that because Vac-It-All did not demand a refund before the lawsuit, the amount at issue was not ascertainable before then. If a demand for payment was not made prior to filing the lawsuit, then the filing itself constitutes a demand.

16

Watters, 136 S.W.3d at 111. At that point, if not before, the amount Vac-It-All claimed it was due was readily ascertainable, as it was expressly stated in the pleading. That the ultimate award was less than the amount requested does not preclude an award of prejudgment interest on the ascertained damages. See id.

On a breach of a contract claim, interest ordinarily runs from the date of the breach or the time when payment was due under the contract. Doe Run Resources, 400 S.W.3d at 477. But here, because it was not until the filing of its counterclaim that Travelers could fairly be said to be on notice of the amount of refund Vac-It-All demanded, interest should run only from the date of the counterclaim. See Watters, 136 S.W.3d at 112; see also Specialty Restaurants Corp. v. Gaebler, 956 S.W.2d 391, 396-97 (Mo. App. W.D. 1997) (where action is to recover overpayment of wages or refund of advance payments, prejudgment interest is properly measured from date of petition).

Point granted.

The judgment entered on the jury's verdicts is affirmed. The judgment denying prejudgment interest is reversed, and the cause is remanded with instructions to the trial court to award Vac-It-All prejudgment interest, as provided in section 408.020, running from the date Vac-It-All filed its counterclaim to the date of the judgment.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

17