

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| CAROL GAAL, | ) | No. ED107045 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1522-CC11297-01 |
| | ) | |
| BJC HEALTH SYSTEM, | ) | |
| d/b/a BJC HEALTHCARE, | ) | Honorable Bryan L. Hettenbach |
| | ) | |
| Respondent. | ) | Filed: December10, 2019 |

### Opinion

Carol Gaal ("Gaal") appeals from the trial court's entry of judgment after a jury's verdict in favor of BJC Health System ("BJC") on Gaal's suit for damages asserting wrongful discharge under theories of disability discrimination and retaliation under the Missouri Human Rights Act ("MHRA"). On appeal, Gaal asserts four points of error from the trial court's submission of BJC's verdict directors and instructions to the jury rather than hers, challenges the trial court's denial of her motion in limine, and asserts error from BJC's use of clips from a video deposition during closing arguments. We affirm.

### Background

Gaal was employed by BJC as a senior accountant from 2006 until August 15, 2014, when BJC terminated her employment. She filed a petition for damages asserting wrongful discharge under the MHRA on two grounds. In Count I, she asserted her actual or perceived

disability of chronic asthma, for which she had received Federal Medical Leave Act ("FMLA") leave, was a contributing factor in BJC's adverse employment actions against her, culminating in her termination. In Count II, she asserted BJC terminated her employment in retaliation for filing a charge of disability discrimination with the Missouri Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC"). She asserted damages for lost wages and benefits, and for mental and emotional distress.

Viewing the relevant evidence in the light most favorable to the jury's verdict, the following evidence was adduced at trial. Jeffery Tillinghast, M.D., (Dr. Tillinghast) testified via deposition that he diagnosed Gaal with mild persistent asthma in April of 2008, which he stated meant her pulmonary function was greater than 80%. Dr. Tillinghast characterized Gaal's lung functions as "excellent" and stated she was "not very symptomatic." He testified Gaal's asthma was well controlled and "probably" did not substantially limit her from engaging in activities or from getting to work on time. However, he also testified Gaal might need to be tardy or absent from work up to six times a year because of her asthma. Likewise, regarding her asthma, Gaal testified she treats her asthma with daily Singulair pills, an inhaler she was supposed to use twice a day, and a rescue inhaler as needed. She stated that her asthma was triggered by cold, wind, extreme heat, cologne, cigarette smoke, and dust; and that stress worsened the impact of her asthma.

Gaal testified to the following. In March 2012, she was experiencing stress at work from an unwelcome office relocation. Anticipating an increase in asthma symptoms, she emailed the Human Resources department ("HR") to submit documentation of medical treatment for prior asthma attacks and positing that her asthma might cause her to be late to work that week. On March 7, she had an asthma attack and left work early. She saw Dr. Tillinghast on March 8 for

her asthma symptoms, and he recommended that she take a week off of work. Gaal agreed that her medical records stated her March 8 examination was "entirely negative" of asthma symptoms with clear lung fields, but she disputed the accuracy of this medical record. Connie Gasko ("Gasko") of BJC HR requested that Gaal have Dr. Tillinghast fill out FMLA paperwork, which he did for March 12-16, 2012. BJC approved the request for FMLA leave. After taking a week off of work, Gaal felt improved and was able to run in a five-mile road race on March 17. Dr. Tillinghast released Gaal to return to work with no restrictions beginning March 17.

Gaal further testified that her asthma worsened in the winter of 2013-2014. The week of January 6, 2014, was the end of the fiscal year and the busiest week of the year. BJC was closed on Monday, January 6, 2014, due to winter weather conditions. Gaal did not go to work on Tuesday, January 7, and she was late into work on Wednesday, Thursday, and Friday. On Saturday January 11, Gaal and several other employees were required to go to work to meet year-end deadlines, but Gaal called to say she would be late because a pipe burst in her basement. Gaal's manager Valerie Gray ("Gray") was angry and told Gaal not to come in and her absence would be considered a no-show. During her testimony, Gaal characterized these absences and tardiness as being due to the effect of the weather upon her asthma; however, on cross-examination, Gaal agreed she did not report to BJC that her asthma was the reason for the absences on Tuesday and Saturday or her tardiness on Thursday. Rather, Gaal agreed that at the time she reported her absences to BJC she stated that she could not come in on Tuesday due to the snow, that she was late on Thursday due to shoveling, and that she would be late on Saturday due to a burst pipe. Further, Gaal agreed she did not apply for FMLA leave for her January absences until May after she had been disciplined and was afraid of losing her job.

3

On January 17, 2014, Gaal was placed on a performance improvement plan ("PIP"), citing her lack of responsibility, poor customer service, and excessive tardiness. Gray provided Gaal with feedback from her clients, some positive and some negative. While clients noted Gaal was good at her job and with details, they characterized her as "usually abrasive and rude," lacking in common courtesy, and "argumentative, dismissive and demanding." Gaal testified that at a meeting about her PIP with Gray and Lori Schreiner ("Schreiner"), Gaal explained that her asthma constituted a disability but stated she could still perform her job, and Gray responded she "did not care" about Gaal's disability and pointed out that Gaal ran marathons, which Gaal understood to mean that BJC did not believe she had a disability. After she was placed on the PIP, Gaal stated she started leaving for work earlier and did not have any further tardiness despite the continuing winter weather conditions and her asthma. On cross-examination, Gaal agreed she had previously received a PIP in 2009 based on her failure to cooperate with co-workers and for taking long lunches. She also agreed that she received a below-average performance rating again in 2010 due to problems with relationships and communications with co-workers and the client and due to tardiness and taking long lunches.

In April 2014, Gaal was denied a raise because she had been placed on a PIP that January. Accordingly, in May 2014 Gaal requested that Dr. Tillinghast fill out FMLA paperwork requesting intermittent FMLA leave and that he backdate the FMLA request to January 2014. In June 2014, BJC denied the request for backdated FMLA but granted intermittent FMLA going forward. Gaal agreed she never needed to use FMLA leave after BJC granted it. Gaal then filed a complaint with the MCHR on June 19, 2014, claiming BJC was treating her differently in the terms and conditions of her employment based on her disability,

4

specifically referencing the January 2014 PIP and the denial of backdated FMLA leave. The complaint was sent to BJC's legal department, which marked it received on July 7, 2014.

Marlene Jones ("Jones"), the Director of HR for BJC in 2014, testified to the following. Jones clarified that, even though an employee cannot be disciplined for taking FMLA-approved leave, the same employee can be disciplined for other conduct or behavior, such as substandard performance. After the January 2014 PIP, although Gaal's attendance improved, her behavior continued to be inappropriate and disruptive to her colleagues. On July 3, 2014, Jones received a recommendation from Gasko that Gaal's employment be terminated for the reasons that (1) BJC had received complaints from clients about Gaal, and a client had requested its account be reassigned from Gaal to someone else; (2) Gaal had refused to take on part of an assignment; and (3) Gaal's co-workers were requesting not to be required to work with Gaal.

After July 3, Gaal's behavior continued to worsen. On August 7, Jones received an email from Gray that Gaal was again refusing to take extra work to help out colleagues, at which time Jones decided to terminate Gaal's employment, citing her behavior, her lack of teamwork, and her marginal performance. Jones testified that at the time of Gaal's termination, Gaal's attendance was not a problem, and Jones's decision to terminate Gaal was not due to Gaal taking FMLA leave or being tardy due to her asthma. Jones agreed she was aware by August 15 that Gaal had filed a complaint with the MCHR; however, she testified that Gaal's filing a complaint had nothing to do with Jones's decision to recommend Gaal's termination. BJC terminated Gaal's employment on August 15, 2014, for the stated reason of violating customer service expectations.

Following trial, the jury entered a verdict in favor of BJC and against Gaal on her claims of disability discrimination and retaliation under the MHRA. This appeal follows.

5

<u>Discussion</u>

<u>Point I(a)</u>[1]

In her first point on appeal, Gaal argues the trial court erred in submitting to the jury the verdict directing Instruction No. 6 tendered by BJC on disability discrimination, instead of Gaal's proposed verdict director under MAI 38.01(B). Specifically, Gaal argues the trial court misapplied the law, in that the submitted verdict director improperly limited Gaal's ability to meet all three possible definitions of a disability under the law, even though the evidence submitted at trial supported all possible definitions. We disagree.

We review de novo the question of law of whether a jury was properly instructed, viewing the record in the light most favorable to the submission of the instruction. *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010). Any issue submitted to the jury in an instruction must be supported by substantial evidence, which is evidence that is probative to the issues and assists the jury in deciding the case. *Id.* To succeed on a claim of instructional error, the party challenging the instruction must show the instruction misdirected, misled, or confused the jury, resulting in prejudice. *Powderly v. S. Co. Anesthesia Assocs., Ltd.*, 245 S.W.3d 267, 276 (Mo. App. E.D. 2008). We will not reverse a jury verdict on the basis of instructional error, including the refusal to give an instruction, unless the error resulted in prejudice. *Romeo v. Jones*, 144 S.W.3d 324, 330 (Mo. App. E.D. 2004).

Section 213.055.1(a),[2] provides, as relevant to the issues on appeal, that it "shall be an unlawful employment practice" for an employer to discharge any individual because of that individual's disability. Section 213.010(4) defines "disability" as a "physical or mental

---

[1] Gaal's Point I includes three separate legal arguments, in violation of Rule 84.04(d)(1). While multifarious points preserve nothing for review, we nevertheless address the merits of each argument *ex gratia*.
[2] All statutory references are to RSMo. (cum. supp. 2017), unless otherwise indicated.

impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job." To qualify as a disability giving rise to a protected status under the MHRA, the disability must substantially limit or be perceived to substantially limit a major life activity, such as communication, ambulation, self-care, socialization, education, vocation training, employment, or transportation. *See Morgan v. Plaza Motor Co.*, 166 F.Supp.3d 969, 975 (E.D. Mo. 2015) (granting summary judgment when plaintiff failed to prove disability because there was no evidence of limitation to major life activity). Here, the parties disputed whether Gaal had a qualifying disability.

Trial courts are required to use Missouri Approved Instructions ("MAI") if an applicable instruction is available. Mo. R. Civ. P. 70.02(b) (2018). MAI 38.01(B) is the applicable instruction for cases alleging MHRA employment discrimination by reason of disability for actions accruing before August 28, 2017, and it reads:

> Your verdict must be for the plaintiff if you believe:
>
> First, plaintiff *["has a (physical) (mental) impairment that substantially limits one or more of plaintiff's major life activities;" "is regarded as having a (physical) (mental) impairment that substantially limits one or more of plaintiff's major life activities;" "has a (physical) (mental) impairment of record that substantially limits one or more of plaintiff's major life activities"]*, and
>
> Second, such impairment ("*would not*" "*did not*") interfere with performing the job in question ("*if provided reasonable accommodation*") ("*and did not require any accommodation*"), and
>
> Third, defendant (*here insert the alleged discriminatory act, such as "failed to hire," "discharged" or other act within the scope of § 213.055, RSMo*) plaintiff, and
>
> Fourth, such disability was a contributing factor in such (*here insert the alleged discriminatory act, such as "failed to hire," "discharged," etc.*), and
>
> Fifth, as a direct result of such conduct, plaintiff sustained damage.

MAI 7th 38.01(B). The Notes on Use for the first paragraph direct the user to "[s]elect the phrase that applies to the case as supported by the evidence." MAI 7th 38.01(B), Notes on Use 1.

Here, Gaal tendered a verdict director that included all three alternate definitions of disabled from the first paragraph: has a physical impairment, is regarded as having a physical impairment, and has a record of a physical impairment. BJC tendered a verdict director that included only the first definition: has a physical impairment that substantially limits one or more of plaintiff's major life activities. The trial court submitted BJC's verdict director to the jury, and Gaal asserts error, arguing the evidence supported all three definitions.

Our review of the record, however, does not demonstrate that the evidence supported either the second or the third definition of disabled: "is regarded as having a (physical…) impairment" and "has a record of a (physical…) impairment." *See* MAI 7th 38.01(B); *see also* Section 213.010(4). First, Gaal testified at trial that Gray challenged Gaal's assertion of disability on the basis that Gaal ran marathons, which Gaal testified she understood to be an accusation that she was lying and her supervisors at BJC did not believe she had a disability. This testimony directly contradicts her assertion on appeal that she met the definition of disabled because BJC regarded her has having a disability. Her theory of disability was that her asthma substantially impacted her major life activities of breathing and walking, and her supervisors' belief that she ran marathons does not support her claim that BJC regarded her asthma as substantially impacting her ability to walk and breathe.

Further, to the extent that Gaal argues BJC's approval of her request for FMLA leave in March 2012 and again in June 2014 per se established that BJC regarded her as having a disability under the MHRA and created a record thereof, this argument is not supported by law.

8

While the MHRA defines disability as an impairment that substantially limits a major life activity, the FMLA applies when an employee has a serious health condition that makes the employee unable to perform the functions of his or her job. 29 C.F.R. § 100(a). The FMLA defines a serious health condition as "an injury, illness, impairment or physical or mental condition that involves inpatient care or continuing treatment." 29 C.F.R. § 825.113. Applying these definitions, one could qualify for FMLA leave by reason of having an impairment or condition that involved inpatient care or continuing treatment, but unless that impairment or condition substantially limited a major life activity, one would not be considered disabled under the MHRA. Thus, the approval of FMLA leave without more does not on its face provide evidence that BJC regarded Gaal as disabled. Looking to the details of Gaal's circumstances, the record does not establish facts showing she had a physical impairment that substantially impacted a major life activity, regardless of BJC's approval of FMLA leave for one week in March of 2012 and in June of 2014.[3]

Similarly, the fact that Gaal was diagnosed with asthma does not per se establish a record of a disability under the MHRA. Rather, a person can only establish a disability under the MHRA if the facts show a physical impairment that substantially limited a major life activity. Gaal here failed to present evidence here sufficient to establish a record of a substantial life limitation from her asthma. Dr. Tillinghast did not place Gaal on work restrictions despite her diagnosis of mild persistent asthma. Even when Gaal returned from FMLA leave in 2012, Dr. Tillinghast stated Gaal could return to work "with no restrictions." Moreover, Dr. Tillinghast

---

[3] Likewise, although Gaal on appeal points to an email exchange between Gray and Gasko in which Gray asserted that BJC's approval of Gaal's request for FMLA leave put her "between a rock and a hard place" as evidence that BJC regarded Gaal as disabled under the MHRA, we disagree. BJC's decision to approve Gaal's request for FMLA leave in June of 2014 was not evidence that it regarded her as having a physical impairment that substantially limited her major life activities. As discussed above, whether a person qualifies for FMLA leave is a different analysis from whether they are disabled under the MHRA.

9

testified that Gaal's asthma was well controlled with medication, and she was "not very symptomatic" with "excellent lung function." Although Gaal alleged substantial limitations on her ability to breathe and walk, other than her occasional asthma attacks that resolved immediately with medication and needed no further treatment, she was demonstrably able to breathe and walk, as evidenced by her ability to run races outdoors in March temperatures. The record showed her asthma required emergency treatment only one time, and not since 2011. Notably, even though she was approved for intermittent FMLA leave in June of 2014, she testified she never needed to use it. On this record, Gaal cannot show a record of having a physical impairment that substantially impacted a major life activity.

Because the evidence did not establish that BJC regarded Gaal as having a physical impairment that substantially impacted a major life activity and because there was no record thereof, the trial court did not err in refusing Gaal's verdict director and instead submitting BJC's. See *Hayes*, 313 S.W.3d at 650.

Point I(a) is denied.

Point I(b)

Also in her first point on appeal, Gaal separately argues the trial court erred in submitting to the jury the verdict directing Instruction No. 6 tendered by BJC because it ignored the disputed question of whether Gaal could perform the duties of her job with the reasonable accommodation of intermittent FMLA leave. We disagree.

BJC asserts on appeal that Gaal did not preserve this issue for appeal because she did not object during the instruction conference to the exclusion of the failure-to-accommodate language from the verdict director for disability discrimination submitted to the jury in Instruction No. 6. We agree with BJC. Rule 70.03 provides that "[c]ounsel shall make specific objections to

instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection." Here, a close review of the transcript of both the instructions conference and the supplemental instructions conference show that Gaal did not object to BJC's Instruction No. 6 on the grounds that it did not contain the reasonable accommodation language, as she was required to do under the language of Rule 70.03. Even further, the record shows that when the trial court asked if there were any further objections to any instruction that had not already been raised, counsel for Gaal replied: "None that I haven't brought to your attention already."

To the extent Gaal argues her objection to other portions of BJC's Instruction No. 6 preserved her objection to the exclusion of the reasonable accommodation language, it does not. A point raised on appeal must be based on the "theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made … at trial." *Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 617 (Mo. App. W.D. 2018) (citation omitted). When the point raised on appeal attempts to challenge an instruction on a different ground than was asserted in the objection the appellant made at trial, "we may not review that error on appeal." *Id.* (citation omitted). Because Gaal did not object at trial to BJC's Instruction No. 6 on the grounds she now asserts on appeal, her challenge is waived.

Point I(b) is denied.

### Point I(c)

Also in her first point on appeal, Gaal separately argues the trial court erred in submitting to the jury the verdict directing Instruction No. 6 because it failed to properly hypothesize the

11

disputed question under MAI 19.01 of whether discriminatory conduct was a contributing factor to Gaal's damage. We disagree.

Again, pursuant to Rule 70.02(b), a trial court must use a Missouri Approved Instruction if it is applicable. The MAI 19.01 modification is applicable in cases involving two or more causes of damage but that do not necessarily involve another party or tortfeasor. MAI 7th 19.01 & Committee Comment A (1995); *Hurst v. Kansas City, Mo. Sch. Dist.*, 437 S.W.3d 327, 335-36 (Mo. App. W.D. 2014) (overturned by legislative action on other grounds) (MAI 19.01 modification may apply to cases brought under MHRA when plaintiff asserted damages caused by (1) elimination of her positions and (2) failure to hire).

Gaal objected to the trial court's rejection of her proposed verdict director on the discrimination charge with the MAI 19.01 modification as follows:

> We believe we should be allowed to include the language of 19.01 which has to do with multiple causes of damage … [for] the reason … [that] there is evidence [Gaal has] suffered what they call garden variety emotional distress. … And there could be other causes contributing to her unfortunate condition.

Although Gaal argued at trial that her "garden variety emotional distress" was a separate "cause of damage" that would entitle her to the MAI 19.01 modification, this argument is not supported by law. MAI 19.01 applies only to multiple *causes* of damages, and emotional distress is a *type* of damage, not a *cause* of damage. *Cf. Doe v. TCI Cablevision*, 110 S.W.3d 363, 368 (Mo. banc 2003) (identifying emotional distress as a type of damage).

Further, while Gaal asserts on appeal that she raised as an alternate cause of damage BJC's discriminatory discipline, her claim is not supported by the record. Our review of the transcript shows that Gaal made no reference to BJC's alleged discriminatory disciplinary

actions.[4] While she made a vague statement that "there could be other causes contributing to her unfortunate condition," this vague statement was not sufficient to properly preserve the issue for our review. *Berra v. Danter*, 299 S.W.3d 690, 702 (Mo. App. E.D. 2009) (to assign error from failure to give instructions, party "must make specific objections to the giving or failure to give instructions before the jury retires to consider its verdict; the objections and grounds therefore must be stated *distinctly* on the record") (citation and internal quotation marks omitted).

Rather, the record shows that the trial court twice stated without objection from Gaal that the only cause of damage was Gaal's discharge. First, the trial court explained it was submitting one package of instructions to the jury on both the discrimination and retaliation claims because "the two packaging concept would produce two separate verdict forms, which would produce confusion about the possibility of two separate sets of damages when, in fact there is one damage occurrence, which is the discharge." Counsel for Gaal did not object to this characterization. Second, the trial court again noted: "we have the single verdict form. Again, referring back to my comments earlier where we did not package because of the single occurrence, which is the discharge, which causes one group of damages, we put them all on one verdict form." The trial court then asked if there were objections to the verdict form, and counsel for Gaal responded: "None." Gaal had these two opportunities to object to the trial court's characterization of her discharge as the single cause of damage, but she specifically stated she had no objection. Gaal's allegation on appeal that she raised alternate causes of damage other than wrongful discharge below are strongly disproven by the record.

---

[4] While Gaal professes on appeal she argued to the trial court that BJC's discriminatory acts of modifying her FMLA leave in 2012 from intermittent to continuous, placing her on a PIP, and denying her a raise constituted an alternate cause of damage, our review of the record reveals no such argument.

Moreover, in her own proposed instruction, Gaal identified discharge as the only cause of damage. Gaal cannot now assert error from the trial court's failure to submit the MAI 19.01 modification, which applies where there are multiple causes of damage, where her own instruction did not submit multiple causes of damage. "Appellate courts will not reverse a trial court on the basis of an invited error." *In Matter of Care and Treatment of George v. State*, 515 S.W.3d 791, 803 (Mo. App. W.D. 2017) (citation omitted). Where a party submits an incorrect instruction, it may not on appeal complain of error stemming from that same instruction. *See id.*; *see also Spence v. BNSF Ry. Co.*, 547 S.W.3d 769, 779 (Mo. banc 2018). Gaal is limited to appellate review only on the precise cause of damage articulated below. "Parties on appeal generally 'must stand or fall' by the theories upon which they tried and submitted their case in the circuit court below." *Ross-Paige v. Saint Louis Metro. Police Dep't*, 492 S.W.3d 164, 175 (Mo. banc 2016).

The trial court here did not err in refusing Gaal's instruction that included the MAI 19.01 modification for multiple causes of damage and instead submitting to the jury the verdict directing Instruction No. 6 tendered by BJC.

Point I(c) is denied.

### Point II

In her second point on appeal, Gaal argues the trial court erred in giving the verdict directing Instruction No. 9 tendered by BJC on Gaal's retaliation claim and refusing Gaal's proposed verdict director under MAI 38.01(A), as modified by MAI 19.01. Specifically, Gaal asserts the trial court misapplied the law in that the verdict director without the MAI 19.01 modification improperly limited Gaal's ability to show retaliation was a contributing cause to her discharge when the evidence showed there were multiple possible causes for her discharge,

14

which was appropriate under the prior contributing-cause legal standard applied here by the trial court, resulting in prejudice to Gaal. We disagree.

BJC again challenges whether Gaal preserved this point for appeal by making an objection to this specific issue at trial. In general, under Rule 70.03, to preserve a claim of instructional error for appeal, the party challenging the instruction must object to the instruction at trial on the same specific grounds raised on appeal. Gaal did not do so. Here, however, we note that the trial court during the instructional conference stated its intention to submit "plaintiff's" verdict director on the retaliation charge, affirmatively informing counsel for Gaal: "[i]t's your verdict director on the retaliation charge." The trial court, however, submitted BJC's verdict director on the retaliation charge to the jury. In light of any possible confusion caused by the trial court's mischaracterization, we review the substance of Gaal's point on appeal. We review de novo whether a jury was properly instructed, viewing the record in the light most favorable to the submission of the instruction. *Hayes*, 313 S.W.3d at 650.

The trial court here did not err in submitting BJC's verdict directing Instruction No. 9 on Gaal's claim of retaliation without the MAI 19.01 modification. As discussed in response to Point I(c), the MAI 19.01 modification is reserved for circumstances where there are multiple causes of damage. Here, there was no allegation in the record below that there was more than one cause of damage. The trial court identified without objection Gaal's discharge as the sole cause of damage, and while counsel for Gaal identified "emotional distress" as an alternate cause of damage sufficient to justify the MAI 19.01 modification, emotional distress is a type of damage, not cause of damage. *See, e.g.*, *Doe*, 110 S.W.3d at 368. Moreover, Gaal in her proposed verdict director for the retaliation instruction identified her discharge as the only cause of damage. Any issue submitted to the jury in an instruction must be supported by substantial

15

evidence, and there is no evidence here of multiple causes of damage. *See Hayes*, 313 S.W.3d at 650. Thus, it was not error for the trial court to submit BJC's verdict directing Instruction No. 9 without the MAI 19.01 modification for multiple causes of damage.

Point II is denied.

## Points III and IV

In her third point on appeal, Gaal argues the trial court erred in giving both "true converse" and "affirmative converse" instructions in Instructions Nos. 7 and 8, which addressed Gaal's disability discrimination claim, because the trial court misapplied the law, in that BJC was allowed only one converse instruction in response to each verdict directing instruction under MAI 33.01. In her fourth point on appeal, Gaal similarly argues the trial court erred in giving both "true converse" and "affirmative converse" instructions in Instructions Nos. 10 and 11, which addressed Gaal's retaliation claim, for the same reason.[5] We disagree with both points, and we address them together because they involve the same legal analysis.

A defendant is entitled to one converse instruction for each of plaintiff's verdict directing instructions. MAI 33.01(A), (L). Converse instructions may be either a true converse or an affirmative converse. MAI 33.01(D). A true converse instruction begins: "Your verdict must be for the defendant unless you believe," and it must mimic the language of the plaintiff's verdict directing instruction. MAI 33.01(E). By contrast, an affirmative converse instruction begins: "Your verdict must be for the defendant if you believe," and it must hypothesize an ultimate issue that, if true and supported by evidence, would defeat plaintiff's claim. MAI 33.01(I).

---

[5] Gaal also initially argued instructions 7, 8, 10, and 11 were incorrect in that affirmative converse instructions require an "affirmative defense tail" referring the jury from the verdict director to the affirmative converse instruction, but the verdict director had no such tail here. MAI 33.01(I). In her reply brief, Gaal withdraws this argument as contrary to the Notes on Use for MAI 38.01(B). Accordingly, we do not address this issue.

16

While a defendant is entitled to only one converse instruction for each of plaintiff's verdict directing instructions, where a defendant has presented an affirmative defense at trial, the defendant is entitled both a converse instruction and an instruction on the affirmative defense. *Moore v. Parks*, 458 S.W.2d 344, 349 (Mo. banc 1970) ("[d]efendant has the right to an instruction submitting the converse of plaintiff's instruction and, in addition thereto, if the evidence supports it an instruction affirmatively based upon his theory of the case"). MAI 38.02 is the "lawful justification" defense instruction for employment discrimination, by which the employer states its alleged lawful reason for its action against the plaintiff. The Notes on Use provide that "[i]f supported by the law and the evidence, an instruction on 'lawful justification' may be submitted at the defendant's option …. If such an instruction is submitted, it must be in the form of this MAI 38.02." MAI 38.02, Notes on Use (2017 Revision).

Here, BJC tendered true converse instructions No. 7 and No. 10 in response to plaintiff's verdict directors on Gaal's discrimination and retaliation claims, and then tendered the "lawful justification" defense Instructions No. 8 and No. 11 modeled on MAI 38.02. Specifically, Instruction No. 8 read:

> Your verdict must be for defendant if you believe:
>
> First, defendant discharged plaintiff because defendant reasonably believed that plaintiff violated its customer service expectations and alienated her co-workers, and
>
> Second, in so doing disability was not a contributing factor.

Likewise, Instruction No. 11 read:

> Your verdict must be for defendant if you believe:
>
> First, defendant discharged plaintiff because defendant reasonably believed that plaintiff violated its customer service expectations and alienated her co-workers, and

17

Second, in so doing plaintiff's filing of the Charge of Discrimination with the Missouri Commission on Human Rights was not a contributing factor.

MAI 38.02 allows the lawful justification instruction whenever it is supported by the law and the evidence, and our review of the record here shows there was evidence supporting BJC's claim that it terminated Gaal because it reasonably believed she violated its customer service expectations and alienated her co-workers. Specifically, there was evidence that, since 2009, Gaal had received two PIPs and a below-average performance rating due to continuing problems with relationships and communications with clients and colleagues. One client had even requested that they be reassigned from Gaal. Despite counseling in these areas since 2009, Gaal's behavior continued to be inappropriate and disruptive to her colleagues, and, on at least two occasions, Gaal refused work assignments. While Gaal disputed BJC's lawful-justification defense, there was sufficient evidence in the record for the trial court to submit BJC's instruction on this defense to the jury. *See* MAI 38.02, Notes on Use (2017 Revision).

Because a defendant is entitled to both a converse instruction for each verdict directing instruction and also an affirmative defense instruction where relevant, the trial court here did not err in giving defense Instructions No. 8 and No. 11 in addition to true converse Instructions No. 7 and No. 10 to the jury. *See Moore*, 458 S.W.2d at 349.

Points III and IV are denied.

### Point V

In her fifth point on appeal, Gaal argues the trial court abused its discretion and plainly erred in denying her motion in limine and allowing BJC to introduce evidence that other employees had been granted FMLA leave because the trial court misapplied the law, in that the introduction of this evidence was not logically relevant to her claim of disability discrimination

18

and resulted in prejudice to Gaal by invoking the jury's sympathy towards BJC witnesses. We disagree.

"The trial court's ruling on a motion in limine is a preliminary ruling on the admissibility of evidence and is subject to change throughout the course of trial." *Henderson v. Fields*, 68 S.W.3d 455, 468 (Mo. App. W.D. 2001) (citing *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 646 (Mo. banc 1997)). Because the trial court's ruling is subject to change at trial, to properly preserve for appeal the admission of evidence complained of in a motion in limine, the party challenging the evidence must also object at trial. *Marquis Fin. Servs. of Indiana Inc. v. Peet*, 365 S.W.3d 256, 260 (Mo. App. E.D. 2012). Gaal concedes that because she did not object to the admission of evidence at trial, this issued is not preserved for review, and she requests plain error review. Plain error review is discretionary, and we will review for plain error only if there are substantial grounds for believing the trial court committed error that is evident, obvious, and clear that resulted in manifest injustice or a miscarriage of justice. Mo. R. Civ. P. 84.13(c) (2019); *see also Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. banc 2014). Plain error review is rarely granted in civil cases. *Id.*

Here, during opening statements, BJC argued Gaal's termination had nothing to do with her application for FMLA leave, and pointed out that multiple other employees had been granted FMLA leave but not terminated. Gaal then filed a motion in limine to prevent BJC from introducing evidence of other employees' FMLA approvals, which she argued was not relevant to her termination for her disability. The trial court denied the motion. Because the trial court denied the earlier motion in limine, Gaal's counsel "made a strategic decision not to object in front of the jury" when BJC introduced the evidence at trial. Plain error is not "available to revive issues already abandoned by selection of trial strategy." *See Wheeler v. Dean*, 482

19

S.W.3d 877, 879 (Mo. App. S.D. 2018) (citation omitted); *In re S.R.J.*, 250 S.W.3d 402, 406 n.2 (Mo. App. E.D. 2008). It was Gaal's counsel's specific trial strategy not to object to the admission of this evidence, and we will not consider on appeal any claim of error intentionally abandoned below.

Point V is denied.

Point VI

In her sixth and final point on appeal, Gaal argues the trial court abused its discretion in overruling her objection and allowing BJC to play approximately two minutes of Dr. Tillinghast's videotaped deposition to the jury during closing arguments because the trial court misapplied the law, in that the use of this videotaped deposition was a misuse of the technology and gave undue emphasis to edited portions of the testimony of an expert witness; and also that the trial court had a duty to review the proposed segments and, if necessary, provide a cautionary instruction to ensure the videotape would not mislead the jury. Gaal asserted the use of the videotape evidence resulted in prejudice by minimizing her alleged disability. We disagree.

"Counsel on both sides of the bar are permitted wide latitude and discretion in referring to evidence and arguing inferences during closing argument." *Minze v. Mo. Dep't of Pub. Safety*, 541 S.W.3d 575, 581 (Mo. App. W.D. 2017) (citation omitted). We review a trial court's decision overruling objections to closing arguments for an abuse of discretion. *Powderly*, 245 S.W.3d at 272.

Here, prior to closing arguments, BJC informed the trial court it planned to offer an approximately two-minute clip from Dr. Tillinghast's testimony during its closing statement. Gaal objected on the grounds that it was an "unfair use of the technology, the equivalent of calling a witness to come and testify during the closing argument." More generally, Gaal also

20

objected that the jury should not be allowed to see a video or hear a deposition during closing argument, characterizing this as "an improper practice." The trial court overruled the objection and allowed BJC to play a clip of Dr. Tillinghast's video deposition.

Initially, although Gaal asserts on appeal the trial court erred in failing to fulfill its duty to review the proposed segments and, if necessary, provide a cautionary instruction to ensure the videotape would not mislead the jury, we note she did not object on this ground before the trial court, and thus it is waived on appeal. "A point on appeal must be based upon the theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made." *Holmes*, 571 S.W.3d at 617 (citation omitted). The failure to object below on the same basis raised on appeal precludes appellate review. *Id.*

As for Gaal's claim that BJC's use of edited portions of Dr. Tillinghast's video deposition during its closing argument was a misuse of the technology, we do not agree. Comments in closing argument are permissible so long as counsel does not go beyond the evidence or the issues presented in the instructions. *Travelers Commercial Casualty Co. v. Vac-It-All Servs., Inc.*, 451 S.W.3d 301, 309 (Mo. App. E.D. 2014). Moreover, parties are not limited to making oral arguments but may reintroduce physical evidence or summaries of evidence, such as videos and electronic slide shows, as long as the evidence was first admitted during the trial. *See*, *e.g.*, *Strong v. State*, 263 S.W.3d 636, 651 (Mo. banc 2008) (use of slide presentation during closing statement of photographs introduced during trial did not prompt jury "to act other than on the basis of reason"); *Powderly*, 245 S.W.3d at 276 (allowing party to play full video previously admitted into evidence during closing argument). "[A] trial court commits no error by permitting counsel to review admissible evidence in argument before the jury after the evidence is in the record." *Powderly*, 245 S.W.3d at 273. Here, the video deposition had been presented

21

to the jury, and there is no allegation that counsel for BJC went beyond or misstated the evidence. While Gaal argues that this Court should be directed by the Kentucky Supreme Court in *Morgan v. Scott*, 291 S.W.3d 622 (Ky. 2009), and by the New Jersey Superior Court in *State v. Muhammad*, 820 A.2d 70 (N.J. Super Ct. App. Div. 2003), and *Condella v. Cumberland Farms., Inc.*, 689 A.2d 872 (N.J. Super Ct. Law Div. 1996), there is sufficient Missouri law informing this Court how to decide this issue, and we therefore do not find it necessary to consider cases from other jurisdictions.

To the extent Gaal's true challenge is that BJC's edited video segments provided highly persuasive support for BJC defense that Gaal's asthma did not constitute a disability, this argument fails. *See Will v. Pepose Vision Inst., P.C.*, 528 S.W.3d 433, 436 (Mo. App. E.D. 2017) (purpose of closing argument is to persuade jury to believe evidence supports your theory of the case). Gaal had the opportunity in her own closing argument and rebuttal to respond to BJC's closing argument and to argue the evidence supporting her theory of the case, which the jury by its verdict found less persuasive. The trial court did not abuse its discretion in allowing BJC to present portions of Dr. Tillinghast's video deposition that supported its defense during its closing argument.

Point VI is denied.

Conclusion

The judgment of the trial court is affirmed.

_____
Robin Ransom, Judge

James M. Dowd, P.J., and Gary M. Gaertner, Jr., J., concur.